**In re Peter BELLUCCI, Debtor.**

**Ralph SWIFT, Plaintiff,**

v.

**Peter BELLUCCI, Defendant.**

**Bankruptcy No. 288–06613–C–11.
Adv. No. 289–0133.**

United States Bankruptcy Court,
E.D. California.

Sept. 27, 1990.

Michael R. Germain, Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., for plaintiff.

Robert T. Mees, Jr., Mees & Lester, Sacramento, Cal., for defendant.

## MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION OF SUA SPONTE ORDER STAYING ADVERSARY PROCEEDING AND LIFTING AUTOMATIC STAY

CHRISTOPHER M. KLEIN,
Bankruptcy Judge.

This motion for reconsideration poses two issues: (1) whether a bankruptcy court has inherent power to abstain (or defer to state courts) on grounds distinct from the statutory bankruptcy abstentions that are authorized by 11 U.S.C. § 305 and 28 U.S.C. § 1334(c); and (2) whether a bankruptcy court may lift the automatic stay provided by 11 U.S.C. § 362 sua sponte.

The ultimate inquiry is the extent to which a bankruptcy court can control its calendar in the name of wise judicial admin-

istration without asking a district court for permission each time.

The narrow questions are whether a bankruptcy court can impose a *Colorado River* stay of an adversary proceeding sua sponte and whether it can lift the automatic stay sua sponte to permit whatever state court action is needed for a judgment to become final. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The issues presented are of particular significance in a jurisdiction where res judicata does not apply until appeals are completed. In the present matter, litigating this adversary proceeding in the bankruptcy court would have the effect of adding two federal appeals as of right to the state appellate scheme and would result in an otherwise unnecessary six-week trial.

I conclude that a bankruptcy court has discretion to invoke *Colorado River* deference, and that such power is distinct from, and not preempted by, the statutory bankruptcy abstention provisions. 11 U.S.C. § 305; 28 U.S.C. § 1334(c). I also conclude that 11 U.S.C. § 105(a) clarifies that a bankruptcy judge can lift the automatic stay of the appeal sua sponte.

1. *Background.*

Peter Bellucci filed this chapter 11 case while his appeal from a $1.1 million judgment in favor of Ralph Swift was before a California court of appeals.[1] Initially, Bellucci wanted the chapter 11 trustee (who was appointed for cause) to pursue the appeal and protested when she did not do so. Then he changed his strategy and now wants the bankruptcy court to perform the function of a state appellate court.

The estate has substantial assets, perhaps enough to pay everyone in full, including Swift. Bellucci insists that such is the case even if Swift's judgment were to be upheld in its entirety. The trustee agrees that assets are substantial but says that prospects for full payment depend upon the outcome of pending fraudulent transfer litigation.

Swift won his judgment in a civil action, filed in 1980, after a three-stage trial that consumed almost six weeks in 1983, 1987, and 1988. Although Bellucci disputes the compensatory damages, he is more vexed by the $450,000.00 in punitive damages. There has now been over a decade of "scorched earth" warfare fueled by personal animosity and obstinance on both sides. Bellucci has a history of suing everyone in his way, including the superior court judge who made the punitive damage award and the first chapter 11 trustee.[2]

Swift filed a proof of claim for the amount of the judgment and filed an adversary proceeding seeking to have his claim declared nondischargeable. Resolution of dischargeability of Swift's judgment ordinarily requires a separate trial in bankruptcy but would be mooted if the claim were to be paid in full.[3]

Bellucci objected to Swift's claim, challenging both the validity and the amount of the judgment. The issues asserted in his objection are purely appellate issues—the sufficiency of the evidence at trial and the trial court's application of California law.[4]

---

**1.** The judgment is for: $407,340.16 compensatory damages; $450,000.00 punitive damages; $195,678.08 prejudgment interest; 50 percent of the net profits of the sale of a particular parcel of real estate; and costs. Judgment, *Swift v. Bellucci,* No. 288803, Cal.Super.Ct., Sacramento County (July 21, 1988).

**2.** Bellucci sued the superior court judge for rendering the judgment against him. *Bellucci v. Backus,* No. 289–M–0120 (Bankr.E.D.Cal.) (referred from E.D.Cal.), *dismissed,* Aug. 23, 1989. And he sued the first chapter 11 trustee to force her to prosecute his appeal. *Bellucci v. Selig,* No. 289–M–0121 (Bankr.E.D.Cal.) (referred from E.D.Cal.), *dismissed,* Aug. 23, 1989.

**3.** *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (Bankruptcy Act); *In re Houtman,* 568 F.2d 651, 653 (9th Cir.1978) (Bankruptcy Act); *Comer v. Comer (In re Comer),* 723 F.2d 737, 740 (9th Cir.1984).

**4.** The specific points advanced in the objection to claim are:

A. The Punitive Damage Award Must Be Reversed As It Was Not Supported By The Evidence[.]

B. Liability For A *Seaman's* Cause [O]f Action Is Not Supported By The Evidence.

1. *Okun* is a relevant indicia of California law regarding the tort [of] bad faith denial of the existence of a contract.

This is fundamentally an effort to have the bankruptcy court "reverse" Swift's judgment and, thereafter, retry the claim.

The adversary proceeding and the objection to claim were consolidated on motion pursuant to Federal Rule of Civil Procedure 42, to minimize cost and delay in a situation that involved common questions.[5]

 I stayed the consolidated proceeding sua sponte once Bellucci's ultimate aim to relitigate the state court judgment became evident and upon learning that assets might be sufficient to pay everyone in full. Concurrently, I lifted the automatic stay sua sponte to permit resolution of the state court appeal.[6]

The stay has two facets, each supported by a different rationale. One is the stay of litigation over the amount of the claim, for which the rationale is pending state litigation that is nearing completion. That stay terminates when the appeal is decided, at which point, regardless of who wins, any subsequent proceedings are likely to take days rather than weeks. The other is the stay of the nondischargeability action because it would be mooted if payment were being made in full. That stay's duration depends upon other events that will transpire within the chapter 11 case.

 The stay of the consolidated proceeding does not interfere with the progress of this chapter 11 case. A plan of reorganization that treats Swift's judgment as a disputed claim to be resolved later can be formulated.[7] A plan can be confirmed before all claims are finally resolved.[8] The stay creates no impediment to other matters in the case or to any other adversary proceedings that are pending.

Bellucci contends that I exceeded my authority in issuing the orders sua sponte and insists that he has a right to use the bankruptcy court as a state appellate court to relitigate *Swift v. Bellucci* in federal court.

2. *Res Judicata and Full Faith and Credit.*

In this case, the need to stay the consolidated proceedings and to lift the stay of the appeal arises from a quirk of California law, which denies preclusive effect to California judgments until appeals are completed:

California and federal law differ in their definition of finality for purposes of res judicata. The pendency of an appeal pre-

2. There is not sufficient evidence of a special relationship between BELLUCCI and SWIFT and, therefore, SWIFT may not recover tort damages for bad faith denial of the contract.
C. The Compensatory Damage Award Should Be Reduced To Reflect The Losses Sustained By BELLUCCI On The Glenwood Project.
1. BELLUCCI presented reliable evidence that the Glenwood project lost $107,962.00.
D. The Compensatory Damage Award Should Be Reduced To Reflect The Most Accurate Calculation Of The Profits From The Air Park Project.
E. SWIFT Is Not Entitled To A Share Of The Commercial Property.
1. The transaction did not qualify as a tax-deferred exchange.
F. There Is Insufficient Evidence That SWIFT Either Obtained Or Retained An Interest In Air Park[.]
Objection To Claim And Motion For Consolidation With Adversary Proceeding, at 7–22 (text of arguments omitted).

5. Federal Rule of Civil Procedure 42 applies in adversary proceedings and in contested matters. Bankr.R. 7042 and 9014.

6. The automatic stay in bankruptcy applies to the debtor's appeal because it is an appeal from a money judgment against the debtor. The test is whether the proceeding below was brought against the debtor; the debtor's status as appellant or appellee is irrelevant. *Ingersoll–Rand Fin. Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1426 (9th Cir.1987); *Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir.1983), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986).

7. At the hearing on the motion for reconsideration, Bellucci's counsel claimed to have already prepared such a plan and said that it is a full payment plan. No credible explanation was given for not having filed it.

8. A claim that is subject to a pending objection can be "temporarily allowed" for the purpose of accepting or rejecting the plan. Bankr.R. 3018(a). Such a claim can be estimated, paid, and later recovered by the estate if there later turns out to have been an overpayment. 11 U.S.C. § 502(j); Bankr.R. 3008.

cludes finality under California law, but, under federal law and the law of many other states, the pendency of an appeal does not alter the res judicata effect of an otherwise final judgment.

15 A. Schwing, *California Practice: Defenses in Civil Actions* § 14.6 (1988) (footnote omitted). This is distinctly a minority rule.[9] In most jurisdictions, the state court judgment would be res judicata on liability and damages and preclude relitigation of those issues in the bankruptcy court.[10]

■ The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that federal courts apply California law in determining the res judicata effect of a California judgment. This statute applies in bankruptcy. *Comer,* 723 F.2d at 737; 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.419[3.–6], at 686–93 (2d ed. 1988); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4470, at n. 44 (1981 and 1990 Supp.).

■ A federal court cannot apply claim or issue preclusion based upon a California judgment that is on appeal because California does not apply such preclusion in its courts. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982) (Title VII). Thus, Swift's judgment, because it was on appeal when the bankruptcy case was filed, is not conclusive of Swift's claim in bankruptcy.[11]

### 3. *Comity, Federalism, and Judicial Efficiency.*

■ Principles of comity, federalism, and judicial efficiency all counsel against allowing federal trial courts to review state court judgments. Where a matter would not be within federal jurisdiction absent bankruptcy and can be timely adjudicated in state court, a distinct congressional policy favors resolution in state court. 28 U.S.C. § 1334(c)(2); *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159, 163 (9th Cir.1986).

■ Swift's judgment is a matter that is classically within the province of a state court. The underlying dispute was between citizens of the same state, involved questions of state law, and judgment was rendered after six weeks of trial in state court. The sole basis for federal jurisdiction is bankruptcy jurisdiction, which, in litigation over claims, is not exclusive jurisdiction. 28 U.S.C. § 1334(b).[12] No overriding federal interest would be served by having a federal bankruptcy court sit as an appellate court in what amounts to a routine appeal from a state court judgment.

The judicial inefficiency demanded by the debtor also offends principles of comity and federalism. Final decisions of bankruptcy courts in determining claims are subject to two appeals as of right.[13] California permits but one appeal as of right. Cal. Const., art. 6, §§ 11–12. If permitted

9. The need for a stay, however, could arise in any state and is not isolated to odd situations. In any jurisdiction, bankruptcy might be filed after a damages award is announced but while there are pending post-trial motions that are preliminary to entry of final judgment.

10. Swift's claim in the state action is the identical claim as that asserted in the bankruptcy court and is supported by the identical facts and the identical legal theories of liability and damages.

11. Judgments from federal courts and courts of most states are res judicata as to liability and damages until reversed on appeal. Bankruptcy does not alter that res judicata effect and does not permit relitigation of those issues. *Comer,* 723 F.2d at 740. If the judgment creditor is paid a bankruptcy distribution and then the judgment is reversed on appeal, bankruptcy law

and procedure permits the claim to be reconsidered and disallowed and any excess payment to be recovered. 11 U.S.C. § 502(j); Bankr.R. 3008.

12. Claims litigation is, jurisdictionally, a hybrid. The state-law right underlying a claim can, if the automatic stay is lifted, be determined in state court. Jurisdiction over the state-law right is concurrent between state and federal courts. The actual claim, once a proof of claim is filed, invokes special bankruptcy rules and procedures that are created by the Bankruptcy Code and that are a matter of exclusive federal jurisdiction. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987).

13. The two federal appeals beyond the bankruptcy court are: (1) district court/bankruptcy appellate panel, 28 U.S.C. §§ 158(a)-(b); and (2) court of appeals, 28 U.S.C. § 158(d).

to proceed in this court, the debtor would supplant one state appeal with three layers of federal review.

The history of this litigation (now in its second decade) teaches that these parties will leave no appeal unprosecuted.[14] Extra appeals would be expensive and time consuming. Of greater concern, they would result in three federal courts passing on the rulings of a California superior court.

Comity, federalism, and judicial efficiency militate in favor of suspending the matter in the bankruptcy court so that the state courts may finish their work and in order to see whether there will be a "full payment" plan. Lifting the automatic stay against the state proceeding is only a partial answer. A concurrent stay of the bankruptcy adversary proceeding is needed to effect the purpose.

### 4. *Staying the Nondischargeability Action.*

■ The part of my order that stays Swift's nondischargeability action is not challenged by Bellucci. It is a temporary stay of a matter that is on the bankruptcy court's docket only. Unless it is mooted or settled, the bankruptcy court must eventually rule on it.

■ A basic attribute of any court, however humble, is the latitude to control its own docket:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

*Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Thus, a bankruptcy court has the inherent power to control its docket, including controlling the timing of proceedings on that docket.

Such control is a matter of judicial discretion. *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983), *citing Landis,* 299 U.S. at 254–55, 57 S.Ct. at 166–67.

I have ample reason to exercise my discretion to suspend activity in the nondischargeability action because it is likely to become moot by other events occurring in my court. Bellucci insists that assets will be sufficient to pay Swift's judgment in full, and that he has already prepared and will file a plan that proposes such treatment for whatever amount is ultimately (and later) determined to be owed to Swift.

My order with respect to the nondischargeability action is, in essence, a mere scheduling order by which a federal trial court places one matter on the calendar in advance of another. Such an order is authorized, inter alia, by Federal Rules of Civil Procedure 16(b), 26(c), 26(d), and 26(f).[15]

### 5. *Staying the Objection to Claim.*

My stay of the litigation over the amount of Swift's claim (the objection to claim) is subject to different considerations and requires separate treatment.

■ A stay of federal litigation to allow completion of a parallel state case closely resembles abstention because "a stay [deferring to parallel state litigation] is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Hospital,* 460 U.S. at 28, 103 S.Ct. at 943. Although a *Colorado River* stay is a form of deference to state court jurisdiction rather than a recognized form of abstention, an exercise of such deference is subject to abstention analysis. *Id.; Coopers & Lybrand v. Sun–Diamond Growers,* 912 F.2d 1135, 1137 (9th Cir.1990); *Federal Deposit Ins. Corp. v. Nichols,* 885 F.2d 633,

---

**14.** *Cf.* W. Shakespeare, *The Tempest,* act II, scene i ("What's past is prologue.").

**15.** Federal Rule of Civil Procedure 26 applies in all "adversary proceedings" (i.e. civil actions) in bankruptcy and all bankruptcy "contested matters." Similarly, Federal Rule of Civil Procedure 16 applies in all "adversary proceedings"

and to any "contested matter" in which the court orders it to be applied. Bankr.R. 7016, 7026, and 9014. "Contested matters" include disputes over disclosure statements and plans of reorganization. Bankr.R. 3020(b) and 9014, advisory committee's note.

637 (9th Cir.1989). *But see* 17A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4247 (1988) (*Colorado River* deference is " 'a fourth type' of abstention").

### 6. *Abstention in Bankruptcy Courts.*

Consideration of the availability of a *Colorado River* stay in bankruptcy courts necessitates a review of statutory bankruptcy abstention and of nonstatutory abstention and abstention-type doctrines.

Several categories of statutory abstention in bankruptcy are authorized by the Bankruptcy Code and the Judicial Code. In addition, there are nonstatutory doctrines of federal jurisprudence that permit abstentions in federal courts regardless of whether there are specific abstention statutes that might be used.

 The statutory abstentions are more favored and are to be imposed more readily than the nonstatutory abstentions:

> The intent of Congress is that abstention must play a far more significant role in limiting those matters, which although properly brought within the reach of jurisdiction under Title 11, are nonetheless best left for resolution to a state or other nonbankruptcy forum.

*Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 425 (Bankr.S. D.Tex.1987). The standards specified in the statutes are easier to satisfy. More important, a statutory abstention cannot be appealed, while a nonstatutory abstention is reviewable.

I begin with a canvas of the measures that potentially apply to permit the state court to decide Bellucci's appeal.[16]

#### a. Section 305 Abstention.

 The first category that might be applied, section 305 abstention, is abstention from the entire bankruptcy. 11 U.S.C. § 305.[17] It is applicable on an all-or-nothing basis to the bankruptcy "case," i.e. the umbrella bankruptcy action that is created by the filing of a petition for relief under the Bankruptcy Code and that normally terminates either by dismissing or by closing the case. The court cannot rely on section 305 abstention to pick and choose proceedings within the case. *Id.;* 28 U.S.C. § 1334(a); *compare* 11 U.S.C. §§ 301-03, *with* 11 U.S.C. §§ 349-50; 1 L. King, *Collier on Bankruptcy* ¶ 3.01[1][c][i] (15th ed. 1990).

 Since federal jurisdiction over the bankruptcy case is exclusive, such abstention is a complete rejection of bankruptcy relief.[18] 28 U.S.C. § 1334(a). The standard to be applied is whether the "interests of creditors and the debtor would be better served by" abstention. 11 U.S.C. § 305(a)(1). The decision "is not reviewable by appeal or otherwise." 11 U.S.C. § 305(c).[19]

**16.** There are other forms of abstention, statutory and nonstatutory, that are not potentially applicable to this consolidated adversary proceeding and that, accordingly, are not discussed here. *Railroad Comm. of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

**17.** 11 U.S.C. § 305 provides, in pertinent parts:
(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; ...
(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.

**18.** Legislative history clarifies that the Congress was deliberately rejecting the general rule that courts with jurisdiction over a matter must take jurisdiction. S.Rep. No. 95–989, 95th Cong.2d Sess. 35 (1978); H.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

**19.** The law is unsettled as to the correct procedure for abstaining under this section. Plain language of the statute, dating from 1978, confers the abstention power on the bankruptcy judge and was not amended in connection with the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333, which made supervision by Article III judges a talisman of the constitutionality of

■ Section 305 abstention is not attractive here because the overall bankruptcy case involves more than a simple two-party dispute. A chapter 11 trustee is prosecuting a number of fraudulent transfer actions. Whether assets exceed liabilities remains to be seen and, according to the trustee, turns on the outcome of her efforts to avoid prepetition transfers. Thus, there is good reason for keeping the bankruptcy case alive.

### b. Section 1334(c)(1) Abstention.

■ The second category of statutory bankruptcy abstention, which is set forth in the Judicial Code, permits the district court to abstain from a discrete proceeding within a bankruptcy case "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).[20] The decision to abstain pursuant to the statute is made by the district court following a report and recommendation from the bankruptcy judge. Bankr.R. 5011(b) and 9033.

■ The report need only focus upon one of the three alternative standards—interest of justice, comity with state courts, or respect for state law. *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 705 (Bankr. S.D.N.Y.1989).[21] A number of common-

sense factors have been identified as pertinent to the inquiry. *Republic Reader's Serv., Inc.*, 81 B.R. at 429, *cited with approval, Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir.1990). A decision to abstain is not reviewable by appeal or otherwise. 28 U.S.C. § 1334(c)(1).

■ Such abstention could be applied in this instance. I could file a report and recommendation that the district court abstain. Bankr.R. 5011(b). The clerk would serve copies upon the parties. *Id.* Within ten days of being served with a copy of the report and recommendation, Bellucci would serve and file objections. *Id.* Within ten days thereafter, Swift would respond and disagree. Bankr.R. 9033(b). The parties would have to obtain a transcript of the record from the court reporter (who often has a backlog of requests). *Id.* The matter would then have to make its way onto the calendar of a district judge, who would review it de novo. Bankr.R. 9033(c).

Such abstention is not attractive in this case, because the procedure is more cumbersome than nonstatutory abstention. Moreover, it invites additional litigation between proven litigious parties and places a busy district judge, through de novo re-

bankruptcy judges in the wake of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The procedural conundrum is the prohibition of review of the abstention decision by appeal or otherwise. 11 U.S.C. § 305(c). If supervision by Article III judges is essential for the constitutionality of the bankruptcy court, then an Article III judge must be able to pass upon an abstention decision. Either of two procedural alternatives would accomplish this result. First, the section might be interpreted, consistent with its plain language, to leave the initial decision to the bankruptcy judge but, construing the statute so as to be constitutional, permit review by the district court. Or, it might be interpreted to require that the district court actually make the initial determination, perhaps borrowing the report and recommendation procedure from Bankruptcy Rules 5011 and 9033.

**20.** 28 U.S.C. § 1334(c):

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a

particular proceeding arising under title 11 or arising in or related to a case under title 11.... Any decision to abstain made under this subsection is not reviewable by appeal or otherwise.

**21.** Some bankruptcy courts have imported the much more restrictive standards used in nonstatutory abstentions when preparing reports and recommendations. *E.g., Eastern Air Lines, Inc. v. International Ass'n of Machinists & Aerospace Workers, AFL-CIO ("IAM") (In re Ionosphere Clubs, Inc.)*, 108 B.R. 951 (Bankr.S.D.N.Y. 1989); *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re The Charter Co.)*, 82 B.R. 602, 603 (Bankr.M.D.Fla.1988). However, the failure of a particular proceeding to satisfy those more stringent nonstatutory standards does not necessarily counsel against statutory bankruptcy abstention. The main purpose of publishing this decision is, as set forth below, to point out that where a proposed abstention from a core proceeding passes muster under the nonstatutory doctrines, it is not necessary to go through the procedure of a report and recommendation followed by de novo review in the district court.

view, in the position of managing the bankruptcy court's docket.

Common sense, wise judicial administration, and economy of judicial resources all counsel that a bankruptcy judge should first consider less cumbersome alternatives before throwing the problem into the lap of a district judge. Thus, after noting one other statutory abstention, we will proceed to consider the availability of nonstatutory alternatives.

c. Section 1334(c)(2) Abstention.

 Section 1334(c)(2) mandatory (and nonreviewable) abstention applies only to noncore proceedings that are merely "related to" the case and that meet other requirements.[22] The objection to claim is a core proceeding that "arises in" the bankruptcy case and, for that reason alone, is ineligible for mandatory abstention.[23]

d. Nonstatutory Doctrines.

 The nonstatutory abstention and abstention-type doctrines were not eliminated from the picture by section 1334 abstention. Rather, they faded into the background because of the ease with which the nonreviewable statutory abstention could be invoked before 1984.

The nonstatutory doctrines emerged from the background after the Bankruptcy Amendments and Federal Judgeship Act of 1984 (enacted in response to *Northern Pipeline Constr. Co.*, 458 U.S. at 50, 102 S.Ct. at 2860) required district court action to employ the nonreviewable statutory abstentions in adversary proceedings. Thereafter, the nonstatutory doctrines remained

as measures useful for bankruptcy courts to invoke in appropriate circumstances.[24]

### (1) *Preemption.*

 Legislative history and the structure of the Bankruptcy Code itself confirm that the bankruptcy abstention statutes do not preempt the nonstatutory alternatives that might be invoked to achieve the same end.

Perhaps the best indication that the bankruptcy court can, on its own, defer to a state court is the bankruptcy court's unquestioned power to lift the automatic stay of proceedings in nonbankruptcy forums.[25] 11 U.S.C. § 362(c). The House and Senate committee reports each observed, regarding "cause" for lifting the stay, that "a desire to permit an action to proceed to completion in another tribunal may provide another such cause." H.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 52 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5838, 6300. It is unlikely that Congress intended that the act of lifting the automatic stay would create additional work for the bankruptcy court by obliging it to race to judgment with another tribunal unless permitted to "sit out" by the district court.

Moreover, the legislative history of the abstention provisions in the Bankruptcy Reform Act of 1978 reflects that Congress was favoring abstention generally and attempting to expand its availability by making abstention determinations unreviewable. *See, e.g.,* H.Rep. 95–595, 95th Cong., 1st Sess. 51 (1977).

---

**22.** The pertinent portion of 28 U.S.C. § 1334(c)(2) is:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise.

**23.** If mandatory abstention were applicable, the district court must make the decision. The same report and recommendation procedure would apply.

**24.** Bankr.R. 5011(b). The essential provisions of 28 U.S.C. § 1471(d) as enacted by the Bankruptcy Reform Act of 1978 appear in the current 28 U.S.C. § 1334(c)(1).

**25.** Automatic stay matters are core proceedings that the bankruptcy court has the power to "hear and determine" and to enter "appropriate orders and judgments." 28 U.S.C. § 157(b).

### (2) *Matters in which a Bankruptcy Court May Abstain or Defer on Nonstatutory Grounds.*

The bankruptcy court's power to invoke abstention or abstention-type doctrines on its own is logically congruent with its power to enter final judgments and orders as prescribed in 28 U.S.C. § 157. The bankruptcy court is authorized to "hear and determine" the "core proceedings" specified in 28 U.S.C. § 157(b)(2) and to "enter appropriate orders and judgments" subject to appellate review by Article III courts pursuant to 28 U.S.C. § 158. This is supplemented by the bankruptcy court's power, within its jurisdiction, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

These provisions are manifestations of the "traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify debtor-creditor relationships." *United States v. Energy Resources Co., Inc.,* —— U.S. ——, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966); *United States Nat'l Bank v. Chase Manhattan Bank,* 331 U.S. 28, 36, 67 S.Ct. 1041, 1045, 91 L.Ed. 1320 (1947); *Pepper v. Litton,* 308 U.S. 295, 303–04, 60 S.Ct. 238, 243–44, 84 L.Ed. 281 (1939).

Within the limits of its jurisdiction, the bankruptcy court operates as an ordinary federal trial court and can make all appropriate substantive and procedural decisions, subject to appellate review in the prescribed manner. An abstention decision in a matter that a bankruptcy court is authorized to "hear and determine" is merely one such order.[26] The threshold question, then, is whether this is a core proceeding.

It is settled that an objection to claim is a core proceeding that a bankruptcy judge may hear and determine.[27] 28 U.S.C. § 157(b)(2)(B). Swift has filed a proof of claim, and Bellucci has objected. The filing of a claim creates a core proceeding that subsumes the state law right. *Katchen,* 382 U.S. at 335, 86 S.Ct. at 475; *Granfinanciera, S.A. v. Nordberg (In re Chase & Sanborn),* —— U.S. ——, 109 S.Ct. 2782, 2799 & n. 14, 106 L.Ed.2d 26 (1989). A state law dispute is not a core proceeding until a claim is actually filed. *Tucson Estates, Inc.,* 912 F.2d 1162 (9th Cir.1990); *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987) (Wisdom, J.).[28]

As nonstatutory abstentions are subject to review, there is no reason to treat them in a manner different from other orders and judgments issued by the federal bankruptcy courts in core proceedings. *Tidwell Indus., Inc. v. Delmarva Homes, Inc., (In re Tidwell Indus., Inc.),* 87 B.R. 345, 350 n. 5 (Bankr.E.D.Pa.1988).

So long as it is constitutional for non-Article III bankruptcy courts to enter final judgments and appropriate orders, subject to appeal, in core proceedings, it cannot be an unconstitutional exercise of

---

**26.** The bankruptcy court generally has power to enter final judgment in "core" proceedings, and in "noncore" proceedings in which the parties have agreed that the bankruptcy court may enter final judgment. 28 U.S.C. §§ 157(b)–(c).

**27.** As this is a "core" proceeding, there is no need in this opinion to address the bankruptcy court's role in abstention in matters where it lacks power to enter final judgments.

**28.** Judge Wisdom in *Wood* articulates the rationale for treating the proof of claim as an event affecting jurisdiction:

In determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding.... A claim against the estate is instituted by filing a proof of claim as provided in the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.

*Wood,* 825 F.2d at 97 (footnotes omitted).

Article III powers for a bankruptcy court to apply nonstatutory abstention doctrines in a core proceeding.

#### (3) *Colorado River Deference.*

The doctrine likely to apply in this instance is a *Colorado River* stay. *Colorado River*, 424 U.S. at 800, 96 S.Ct. at 1238; *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); *Moses H. Cone Memorial Hospital*, 460 U.S. at 13–19, 103 S.Ct. at 935–39; *cf. Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 273, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988).

▆▆▆ Under the *Colorado River* doctrine, a federal trial court has discretion, in "exceptional circumstances" and despite the general obligation to exercise jurisdiction, to stay or dismiss an action for reasons of wise judicial administration solely because of the existence of parallel litigation in state court. The doctrine applies in bankruptcy. *See Wilkey v. Sutton (In re Sutton)*, 109 B.R. 238 (Bankr.W.D.Ky. 1989); *Tidwell Indus., Inc.*, 87 B.R. at 345.

▆▆▆ As *Colorado River* deference is applied in the Ninth Circuit, federal trial courts must stay, rather than dismiss, actions in which they decide to defer to state court proceedings. *Coopers & Lybrand*, 912 F.2d at 1137; *Attwood v. Mendocino Coast Dist. Hospital*, 886 F.2d 241, 243 (9th Cir.1989) ("the federal forum will remain open if 'for some unexpected reason the state forum does turn out to be inadequate' ").

▆▆▆ The determination is guided by an exceptional circumstances test based upon six factors that emerge from the Supreme Court's decisions in *Colorado River* and its progeny:

1. The assumption of jurisdiction over any res or property in question.

2. The relative convenience of the state and federal forums.

3. The danger of unnecessarily piecemeal litigation.[29]

4. The order in which concurrent tribunals obtained and exercised jurisdiction.

5. Whether federal or state law provides the rule of decision on the merits.[30]

6. The adequacy of the state proceeding to protect the parties' rights.[31]

These factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Hospital*, 460 U.S. at 21, 103 S.Ct. at 940. Mechanical applications are disfavored. *Id.*

#### 7. *Colorado River Deference in this Case.*

▆▆▆ The various *Colorado River* factors are now taken in turn in order to consider whether such abstention should be imposed in this proceeding.

a. Assumption of Jurisdiction over Res or Property in Question.

The first *Colorado River* factor—assumption of jurisdiction over the res or the property in question—is not relevant here. The dispute relates to the validity of a money judgment. Money is not the type of tangible personal property that is referenced in *Colorado River. American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988).

To be sure, all of Bellucci's then-existing property came into exclusive federal jurisdiction when the bankruptcy case was filed. 28 U.S.C. § 1334(d). The pertinent inquiry is whether the state appellate decision would interfere with the automatic federal jurisdiction over Bellucci's property. It would not; a state appellate decision in these circumstances is likely to facilitate

---

**29.** The "unnecessary" aspect comes from *Moses H. Cone Hospital,* 460 U.S. at 20, 103 S.Ct. at 939.

**30.** This factor emerges from *Will v. Calvert Fire Ins. Co.,* 437 U.S. at 667, 98 S.Ct. at 2559 (Blackmun, J., concurring); *id.* at 668–77 (Brennan, J.,

dissenting). *See Moses H. Cone Hospital,* 460 U.S. at 23–24, 103 S.Ct. at 941.

**31.** This factor emerges from *Moses H. Cone Hospital,* 460 U.S. at 26–27, 103 S.Ct. at 942–43.

the orderly resolution of the bankruptcy case.

### b. Relative Convenience of State or Federal Court.

In terms of effort and expense, state court is the more convenient forum in which to resolve the dispute over Swift's judgment. The state court of appeals hears the final appeal of right under California law; the state supreme court has discretion to grant or deny review. The judgment will likely achieve finality in the pending state proceeding. In contrast, the bankruptcy court's determination is subject to two additional appeals of right. Starting anew in this court whose decision is subject to two additional appeals is plainly inconvenient.[32]

### c. Piecemeal Litigation.

The danger of unnecessary piecemeal litigation over the amount of Swift's claim also favors allowing the state court to rule on the appeal. If the money judgment were to be affirmed by the state court, the judgment would be conclusive of the amount. Piecemeal litigation would ‧ be avoided.

It will be unnecessary for the bankruptcy court to proceed with a trial on the estimation of Swift's claim unless and until the state appellate court reverses Swift's judgment in a fashion that necessitates a retrial. If that were to happen, this court would then need to revisit the question of which forum would be appropriate for further proceedings. That possibility is one of the reasons that the stay of the proceedings in this court terminates when the state appeal is decided.

### d. Order in which Tribunals Obtained and Exercised Jurisdiction.

The order in which the state and federal courts obtained jurisdiction over Swift's claim strongly militates in favor of a stay. The focus is on the relative progress of the cases in the state and federal forums—how the courts have "exercised" their jurisdiction. The order of filing is considerably less important.[33] For example, in *Colorado River* this factor favored a stay because of the comparative inactivity in the federal court even though the federal suit was filed first. *Colorado River*, 424 U.S. at 820, 96 S.Ct. at 1247. In contrast, in *Moses H. Cone Hospital* this factor counseled against a stay because "[i]n realistic terms, the federal suit was running well ahead of the [earlier filed] state suit at the very time that the District Court decided to refuse to adjudicate the case." *Moses H. Cone Hospital*, 460 U.S. at 22, 103 S.Ct. at 940.

Under any analysis, the state court appeal from Swift's judgment is running far ahead of the bankruptcy objection to claim. The state court action, *Swift v. Bellucci*, was filed nearly nine years before the Bellucci bankruptcy. The dispute was fully litigated in a three-stage trial that had consumed a total of nearly six weeks in 1983, 1987, and 1988. Bellucci lost, appealed, and filed this bankruptcy shortly before the date on which he was obliged by state law to post a bond.

The "summary" nature of bankruptcy claims litigation when liability is contested is not as foreshortened or lacking in due process as is commonly supposed.[34] Moreover, it does not, except for the early (ten-

---

**32.** Bellucci says the state appeal may not be decided within a year (Swift disagrees). Even if the state appellate court were to take a long time to rule, it is likely to be sooner than the rulings in the federal appeals that would be engendered if the bankruptcy court were to hear the appeal. The district court currently has three vacancies among the six authorized judgeships and labors over one of the heaviest drug prosecution caseloads in the nation. And, in 1989, the median time from notice of appeal to final disposition by the Ninth Circuit was 15.9 months. *1989 Annual Report of the Ninth Circuit*, at 57.

**33.** Of course, the very nature of bankruptcy ordinarily makes priority of filing of even less consequence.

**34.** The description of an objection to claim as a "summary" proceeding refers more to jurisdictional considerations than to procedure. In reality, the applicability of the Federal Rules of Evidence and many of the Federal Rules of Civil Procedure should cause the actual trial of the "summary" proceeding to resemble closely a bench trial in a district court. The same discovery rules apply, as do the rules for taking evidence, making findings, and rendering judg-

day rather than thirty-day) deadline for appeal, speed up the federal appellate process.

The state appeal is likely to be resolved sooner than the expected federal appeals. The relative progress of the parallel cases makes the argument for deferring to the state court nearly compelling.

### e. Whether Federal or State Law Provides the Rule of Decision on the Merits.

Substantively, *Swift v. Bellucci* is a garden-variety common law dispute between two California citizens. California law provides the rule of decision on the merits. The six specific objections are purely appellate issues relating to the state-court trial —e.g. sufficiency of the evidence of bad faith denial of the contract and of damages.[35]

The fact of bankruptcy does not change the substantive law that applies to the merits of a claim.[36] Jurisdiction over an underlying state law dispute is concurrent in the state and federal courts. Although the actual allowance of a claim may be a federal question and involve the specialized bankruptcy limitations on allowance of claims, 11 U.S.C. § 502, none of the bankruptcy limitations are in issue here. As Bellucci's objection to claim relates entirely to the underlying state law dispute, no federal question is presented, and the state appellate court will consider and resolve only issues of state law.

### f. Adequacy of the State Court Proceeding to Protect the Parties' Rights.

In the context of federal bankruptcy proceedings, the *Colorado River* factor regarding the adequacy of the state court proceeding to protect the parties' rights assumes special significance. That is because a basic purpose of bankruptcy is to bring all claims (including claims pending in state court) against a debtor into the bankruptcy court and resolve them expeditiously. 11 U.S.C. § 502.[37] An automatic stay is imposed against all litigation pending in other courts. 11 U.S.C. § 362(a)(1). A creditor who does not bring a claim into bankruptcy court risks having that claim wiped out. *See, e.g.,* 11 U.S.C. § 524(a).

Nevertheless, the statutes and rules that favor the bankruptcy forum and that, in this instance, give the bankruptcy court control over litigation in a state court does not preclude resolution of Swift's claim in state court. The bankruptcy court has discretion to lift the automatic stay.

It is against this background that the court must assess the parties' rights. The initial bankruptcy filing freezes actions against the debtor. Thereafter, the court must strike a fair balance between the rights of the debtor and of the creditors. Bellucci's and Swift's paramount right to be protected in this instance is the right to have their dispute, the merits of which are governed by California law, finally resolved as fairly and as expeditiously as possible. The California appellate court is fully able to protect their rights.

The right to a timely reorganization is not frustrated by this abstention. Reorganization plans are commonly confirmed before disputes over claims are resolved. Bellucci's counsel says that he has drafted, and is prepared to file, a full-payment plan

---

ment. *E.g.,* Fed.R.Civ.P. 26–37, 41–46, 52, 54–56, and 58–60, *adopted by* Bankr.R. 7026–7037, 7041–42, 7052, 7054–56, 9014, 9016–17, 9021, 9023–24, and 9026. Thus, the Bankruptcy Rules contemplate that the procedure by which the bankruptcy courts and the district courts accomplish due process be *essentially the same*.

**35.** The precise objections are quoted at note 4 above.

**36.** Procedure for establishing liability on a claim differs from nonbankruptcy procedure,

particularly with respect to uncontested claims. However, once an issue is joined by way of an objection to claim, the procedural gap narrows since the matter is resolved by determining the facts and applying the applicable substantive law. Thus, where there is bona fide claims litigation, the effect of incorporation of the Federal Rules of Civil Procedure makes the trial resemble general federal civil litigation.

**37.** Bellucci's insistence that the bankruptcy court must "estimate" Swift's claim here and now is a red herring that is discussed in a separate section below.

of reorganization that takes into account the possibility of eventually having to pay Swift's judgment.

### 8. *Effect Of Stay On Reorganization Case.*

■ Bellucci argues that 11 U.S.C. § 502(c)(1) imposes on the court an inescap-able duty to "estimate" Swift's claim imme-diately and that my *Colorado River* stay breaches that duty. The fallacies in that argument become apparent upon examina-tion of the language of section 502(c)(1) and of the provisions for temporary allowance of a claim at Bankruptcy Rule 3018(a).

#### a. Estimation of Claims per 11 U.S.C. § 502(c)(1).

Contingent and unliquidated claims, oth-er than personal injury tort and wrongful death claims, can be "estimated" by the bankruptcy court in a core proceeding. 11 U.S.C. § 502(c)(1); 28 U.S.C. § 157. There need be no estimation, however, unless awaiting final resolution "would unduly de-lay the administration of the case." 11 U.S.C. § 502(c)(1).[38]

Deciding what "would unduly delay" the case necessarily calls for an exercise of judicial discretion. One pertinent question is whether the uncertain status of the claim impedes the parties' ability to prepare a plan of reorganization within a reasonable time.

The uncertain status of Swift's claim is not an impediment to Bellucci's ability to prepare and file a plan. After all, Bellucci contends that assets are ample to fund a "full payment" plan even if Swift's judg-ment survives appeal. Bellucci's plan could provide that funds to pay Swift's judgment be placed in neutral hands until the amount is finally determined. Thus, the debtor's invocation of section 502(c)(1) is contradicted by his own theory of the case.

---

**38.** Bellucci fails to note that qualifying lan-guage.

**39.** If such a motion were to be made, I would have the discretion to determine how much

#### b. Temporary Allowance of a Claim.

"Temporary allowance" of the claim un-der Bankruptcy Rule 3018(a) is a measure short of "estimation" that would adequate-ly enable Swift's judgment to be taken into account for purposes of moving forward with a plan of reorganization.

The holder of a claim to which an objec-tion has been filed may seek to have the claim temporarily allowed pursuant to Bankruptcy Rule 3018(a):

Notwithstanding objection to a claim or interest, the court after notice and hear-ing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accept-ing or rejecting a plan.

Bankr.R. 3018(a). In this manner, a credi-tor whose claim is not otherwise "deemed allowed" under 11 U.S.C. § 502(a) may par-ticipate in the reorganization.

■ A motion is required to obtain tem-porary allowance of a claim, and may be made by either the claimant or another party in interest. *Bell Road Inv. Co. v. M. Long Arabians (In re M. Long Arabians),* 103 B.R. 211, 215 (Bankr. 9th Cir.1989); *In re Orosco,* 77 B.R. 246, 249 (Bankr.N.D. Cal.1987); 8 L. King, *Collier on Bank-ruptcy* ¶ 3018.03[2] (15th ed. 1990). No such motion has been made in this case.[39]

### 9. *Authority to Lift Automatic Stay Sua Sponte.*

■ Finally, Bellucci maintains that a bankruptcy court cannot sua sponte lift the automatic stay in order to permit the state court appeal to proceed. As he puts it, a "bankruptcy court lacks *standing* to lift the automatic stay sua sponte." Motion For Reconsideration, at 2 (emphasis sup-plied).

He points to the language in section 362(d) that refers to a request from a party in interest:

(d) On request of a party in interest and after notice and a hearing, the court shall

effect to give to Swift's judgment for the limited purpose of moving forward with a plan of reor-ganization notwithstanding the *Colorado River* stay.

grant relief from the stay provided under subsection (a) of this section ...

11 U.S.C. § 362(d). He asserts that a court is not a "party in interest" and, thus, is precluded from raising such matters on its own. This argument is incorrect.

Congress has specified that provisions in the Bankruptcy Code calling for a party in interest to raise an issue shall not be construed to prohibit the court from raising the issue:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a), *as amended by* Act of Oct. 27, 1986, § 203, Pub.L. No. 99–554, 100 Stat. 3097 (1986).

The second sentence of section 105(a) is a rule of construction that, when applied to section 362(d), compels the conclusion that a bankruptcy court can lift the automatic stay sua sponte. The revision of the statute in 1986 effectively overruled prior decisions prohibiting a court from acting sua sponte when the statute authorized a party in interest to raise an issue. It lays to rest Bellucci's argument that a bankruptcy court cannot lift the automatic stay sua sponte.

The decision by Congress to place the rule of construction in section 105(a), rather than among the rules of construction in section 102, shows that the Congress regarded such sua sponte actions as one use of the power to issue "any order, process, or judgment that is necessary or appropriate" to implement the Bankruptcy Code. 11 U.S.C. § 105(a).

In sum, bankruptcy courts may lift the automatic stay sua sponte notwithstanding the language in section 362(d) that permits a "party in interest" to seek relief from the automatic stay.

10. *Conclusion.*

For the foregoing reasons, the Motion For Reconsideration will be denied. The *Colorado River* stay was imposed pursuant to a bankruptcy court's inherent powers to control litigation and as authorized by section 105(a). The lifting of the automatic stay sua sponte to permit the state appeal to be completed was permissible and appropriate.

An order denying the Motion For Reconsideration will issue.