**In re Pishit PATEL and Rama Patel, Debtors.**

**Pashard, Inc., Debtor.**

**Bill N. Shepard, Movant,**

**v.**

**Pishit Patel, Rama Patel and Pashard, Inc., Respondents.**

**Nos. 02–01270–BHC–RJHB, 02–01271–BHC–RJHB.**

United States Bankruptcy Court, D. Arizona.

Jan. 30, 2003.

Alisa Lacey, Esq., C. Taylor Ashworth, Esq., Phoenix, AZ, for Pishit & Rama Patel.

Robert A. Shull, Esq., P. Bruce Converse, Esq., Mariscal Weeks McIntyre & Friedlander PA, Phoenix, AZ, for Bill Shepard.

Steven N. Berger, Esq., Engelman Berger PC, Phoenix, AZ, for Lowell Rothschild.

Cynthia L. Fulton, Esq., Phoenix, AZ, for Charger Properties.

Barry A. Reiss, Esq., Phoenix, AZ, for 6 creditors.

## MEMORANDUM DECISION RE: SHEPARD'S FIRST AND SECOND MOTIONS FOR RELIEF FROM AUTOMATIC STAY

RANDOLPH J. HAINES, Bankruptcy Judge.

Alleged creditor and equity holder Dr. William Shepard ("Shepard") has filed two motions for relief from the automatic stay so that he may continue to prosecute two civil actions that he initiated in California Superior Court. For the reasons set forth below, both motions are denied, without prejudice.

### Procedural Background

On or about March 14, 2001, Shepard filed suit in the San Bernardino County Superior Court against Defendants Pashard, Inc. ("Pashard") and Pishit and Rama Patel (the "Patels"), Case No. NCVNS000275 ("*Shepard v. Pashard*"). Count One of the First Amended Complaint sought a declaration that Shepard was entitled to own 50% of the shares of stock of Defendant Pashard, whereas the Patels contended that he owned less than that, perhaps only 30%. The Third, Fourth, Seventh and Eighth Counts of the First Amended Complaint asserted shareholder derivative actions on behalf of Pashard, alleging that the Patels skimmed or embezzled substantial amounts of Pashard assets in breach of the fiduciary duties they owed Pashard in their capacity as officers and directors of Pashard. Counts Two, Five, Six, Nine and Ten made similar allegations with respect to Pashard's wholly owned subsidiary, Pashard Needles, Inc.

*Shepard v. Pashard* was tried before Judge Brisco and an advisory jury in August and September 2002. The jury rendered an advisory verdict on September 18, 2002 to the effect that Defendant Pishit Patel owed over $988,000 individually to Plaintiff Shepard, and on the derivative actions that Pashard had sustained over $2,356,000 in damages as a result of the Patels' alleged fraud and breaches of fiduciary duty. On September 20, 2002, the jury rendered an advisory verdict awarding over $3.1 million in punitive damages against the Patels. After the verdicts, Judge Brisco directed Shepard's counsel to prepare and lodge a statement of decision consistent with the jury verdicts, but that was stayed by the filing of Chapter 11 petitions by Pashard and the Patels (collectively "Debtors") on September 26, 2002.

Shepard's first motion for relief from stay seeks authority to proceed with *Shepard v. Pashard* in the California Superior Court. In the meantime, however, Debtors removed that case to the United States Bankruptcy Court for the Central District of California, Eastern Division, sitting in Riverside. Presently pending before that bankruptcy court are the Debtors' motions to transfer venue of that litigation to this Arizona Bankruptcy Court, and Shepard's motion to remand that litigation to state court. A hearing is presently set on both motions for February 6, 2003.

Also in March of 1998, Shepard filed a second action against the Patels only in the San Bernardino County Superior Court, Case No. NCVNS00029 (*"Shepard v. Patel"*). The First Amended Complaint in that action asserted 22 counts with respect to six joint ventures: (1) the Island Inn Resort Joint Venture regarding a motel in Lake Havasu, Arizona (Counts One through Four); (2) the Motel 6 Joint Venture regarding a motel in Williams, Arizona (Counts Five through Eight); (3) the Parker Joint Venture regarding a Best Western Motel in Parker, Arizona (Counts Nine through Twelve); (4) the Williams Joint Venture regarding a Holiday Inn Motel in Williams, Arizona (Counts Thirteen through Sixteen); (5) the Blyth Joint Venture regarding a Holiday Inn Express Motel in Blyth, California (Counts Seventeen through Twenty); and (6) the Holbrook Joint Venture regarding real property in Holbrook, Arizona (Counts Twenty–One and Twenty–Two). The various counts sought declaratory relief regarding the alleged joint ventures' respective rights, accounting and dissolution of the joint ventures, and damages for fraud and breach of fiduciary duty.

*Shepard v. Patel* was set for trial on December 5, 2002.

Voluntary petitions under Chapter 11 were filed by Pashard and the Patels on September 26, 2002. The cases were ordered jointly administered on November 4, 2002. On December 5, 2002, Shepard moved to dismiss the Pashard case or in the alternative appoint a trustee. Upon the agreement of Shepard to withdraw the motion to dismiss and the agreement of Pashard to the appointment of a trustee, the Court ordered a trustee appointed and, upon his selection by the Office of the U.S. Trustee, Lowell E. Rothschild was appointed Trustee for Pashard on December 23, 2002.

On November 12, 2002, Shepard filed his first and second motions for relief from stay, seeking authority to continue the prosecution of *Shepard v. Pashard* and *Shepard v. Patel*, respectively. Objections to such motion were filed by Pashard and the Patels, by secured creditor Barry Reiss, *et al.*, and by secured creditor Charger Properties Limited Partnership.

A non-evidentiary hearing on the motions for stay relief was held on January 21, 2003. At that hearing Rothschild, the Pashard Trustee, took no position on whether stay relief should be granted, but also asserted that the derivative actions asserted in *Shepard v. Pashard* properly belonged to the trustee.

## Legal Analysis

All that is presently before this Court is a motion for stay relief to allow litigation to proceed. That litigation was originally filed in California Superior Court, it is presently pending before the Riverside Bankruptcy Court, and it may ultimately wind up in either of those two courts or in this Court depending on decisions to be made regarding venue and remand. Consequently although the only issue to be decided at present is stay relief, its determination has an effect on related issues such as abstention, remand and whether a matter is a "core" proceeding. Because these issues can become rather convoluted and the standards for determining each are similar but somewhat distinct and certainly serve differing purposes and policies, it is important to delineate a clear conceptual path for the resolution of these closely related issues.

To avoid confusion, the issues should be addressed in the following order: (1) Does bankruptcy jurisdiction exist over a particular dispute? (2) If such jurisdiction exists, should it be exercised, or should the

dispute be resolved in state court? (3) If bankruptcy court jurisdiction exists and should be exercised, should it be exercised by the bankruptcy court or by the district court? Despite abundant confusion in the case law, technically the designation of a matter as a "core" proceeding pursuant to 28 U.S.C. § 157(b) is outcome determinative only as to the third issue, and has no direct bearing on the first two issues. The lift stay motion presently before me technically raises only the second issue, although the first must necessarily be addressed as a threshold matter. The third issue is not presently before me, so it is not necessary to determine whether the issues are "core."

There is another important distinction. The lift stay motion raises only the question of whether certain pending litigation should proceed. If stay relief is granted, that will necessitate a second decision, whether the litigation should proceed under bankruptcy jurisdiction or under state court jurisdiction. Relief from the stay would, however, determine the nature of the proceeding, namely by what is essentially two-party litigation largely driven by the plaintiff. Denial of stay relief, on the other hand, would essentially mean that to the extent these disputes must be resolved in order to conclude these Chapter 11 cases, they will be resolved either by the claims adjudication process or by negotiation and confirmation of a Chapter 11 plan. Both of those latter processes are inherently multiparty in nature and their timing and structure are largely driven by the debtor-in-possession or trustee, rather than by the plaintiff/creditor. What is before me now is essentially the choice between two-party litigation (in whatever court) or the multi-party processes typical of a bankruptcy case.

■ Stay relief shall be granted upon a showing of "cause," which "has no clear definition and is determined on a case-by-case basis." *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 352 (9th Cir.1996), quoting *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.1990). The decision whether to grant or deny relief from the automatic stay "is committed to the sound discretion of the bankruptcy court." *Conejo*, 96 F.3d at 351.

Especially when litigation in a nonbankruptcy court is ready for trial, or has already been tried and is ready for judgment, it is not uncommon for bankruptcy courts to find cause to lift the automatic stay, at least to permit entry of judgment to liquidate the amount of a claim asserted against a debtor. That is especially true when a litigation involves uniquely state law issues that bankruptcy courts rarely address, such as domestic relations disputes, land and water law, or state regulatory issues. The issues presented in *Shepard v. Pashard* and *Shepard v. Patel*, however, are not of that kind, but rather are ordinary commercial and partnership disputes of the kind that are routinely heard by bankruptcy courts.

Even though *Shepard v. Pashard* is close to being ready for entry of judgment, and *Shepard v. Patel* was close to being ready for a state court trial, there are several reasons why stay relief should not be granted to permit those cases to proceed to judgment.

First, Shepard's claims do not merely raise two-party disputes. Rather, they concern the management and continued operation of several business ventures that are assets of the Pashard and Patel estates. Consequently the issues involved in the two cases are of significant concern to more than the two parties. All of the creditors in these cases have an interest in whether the Debtor may be allowed to

continue in management of these business ventures and in whether the six joint ventures should be dissolved. Indeed, this is precisely the objection asserted by the two secured creditors who objected to Shepard's motions for relief from stay. Consequently both cases present inherently multiparty issues for which the bankruptcy processes are better suited than a two-party litigation, and for which the bankruptcy courts are more experienced than are the state courts.

For example, if Shepard is required to file a proof of claim for amounts claimed to be owed him by either Pashard or the Patels, not only the Debtor and the Trustee but also any creditor can object to such proof of claim. There may also be a creditors committee appointed to represent the interests of creditors generally, and such committee may object to a proof of claim. Yet if those same claims are determined in the two-party litigation following relief from stay, it is not clear that any creditor would be permitted to intervene in such litigation, and the standing of a creditors committee may not be recognized by a nonbankruptcy court.

Second, one of the fundamental purposes of the automatic stay is to give "the debtor a breathing spell from his creditors." *Conejo*, 96 F.3d at 351, quoting S. REP. No. 95–989, at 54–55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41. While this breathing spell is often thought of in terms of relief from collection efforts, to this Court's mind a related fundamental purpose is to provide relief from litigation. While plaintiffs typically choose the forum and direct the pace of litigation in nonbankruptcy courts, it is the debtor who chooses the forum and directs the pace of much litigation in bankruptcy court. For

example, while creditors can file proofs of claim at virtually any time, they are not in charge of scheduling the litigation to resolve those claims. There is not even a contested matter until the debtor or someone else objects to such claims, and the Bankruptcy Code imposes no deadlines for such objections. Consequently the timing of the initiation of contested claims litigation is basically put in the hands of the debtor, debtor–in–possession or trustee. This breathing spell permits the debtor to focus on matters of more general importance to the estate and the creditor body, such as stabilizing operations, stemming losses and returning to profitability, selling burdensome assets, and negotiating a plan of reorganization. While the debtor focuses on those issues, it can put off claims litigation even until after confirmation of a plan by the simple expedient of not filing objections to claims until it is ready to focus on that process. Consequently the "breathing spell" provided by the automatic stay is not merely for the benefit of the debtor, but is for the benefit of the entire estate and creditor body. Thus for this reason as well, the administrative bankruptcy processes are better suited to the interests of multiple parties, which is a valuable benefit to the estate that should not lightly be foregone simply due to the happenstance that a creditor's litigation was close to trial or close to judgment before the bankruptcy case was filed. That fluke of timing has little or nothing to do with what the debtor's energies and resources should be focused on for the benefit of the entire estate and creditor body.

Third, the bankruptcy court is in a better position than is a nonbankruptcy court[1] to ascertain what is important to be

1. Of course it is possible that if stay relief were granted, the litigation could nevertheless proceed in a bankruptcy court, by removal.

So the reference to "nonbankruptcy" courts and processes should be read to include a reference to litigation in bankruptcy court

decided and when, and what may be moot or may be resolved by alternative processes such as confirmation of a plan. In that context, nonbankruptcy court litigation may be extremely wasteful. For example, under most civil procedure processes a plaintiff must ordinarily present all related claims, causes of actions and legal theories or risk their waiver or preclusion. Thus from a bankruptcy perspective a plaintiff such as Shepard may be required to assert and litigate together claims that a bankruptcy court would classify as general unsecured claims, as claims that are subordinate to some or all other claims pursuant to 11 U.S.C. §§ 510(a), (b) or (c),[2] or that are actually equity interests rather than claims at all. Depending on the structure of a Chapter 11 plan, however, some or all of these issues may be moot. Thus the bankruptcy court is in a better posture to determine the claims issues that will have a real significance, while deferring the determination of issues that may become moot. It would be a clear waste of resources to require all such issues to be resolved by a nonbankruptcy court without regard to their treatment in a Chapter 11 plan.

Fourth, retaining the automatic stay in effect may promote judicial economy by preventing the duplication of litigation. Even if the stay were lifted so that Shepard could liquidate his claims in state court, it still may be necessary to have essentially duplicative litigation in this Court. Other creditors may object to Shepard's proof of claim and assert they are not barred by *res judicata* or *collateral estoppel* because they were not parties

to the state court litigation. The liquidated claim may be subject to some unique bankruptcy defenses such as subordination pursuant to §§ 510(b) or (c) or disallowance pursuant to §§ 502(b)(2), (4) or (5). The claim may need to be estimated pursuant to § 502(c). Or the claims may be so complex that they are better resolved by a unique bankruptcy remedy such as substantive consolidation. It makes little sense to accomplish in two separate processes, in different courts under different rules, what could be accomplished in one court.

Fifth, granting Shepard relief from stay may result in bifurcation of *Shepard v. Pashard,* because the Trustee, who now has exclusive ownership and control of the derivative claims, has not requested stay relief. Indeed, he may decide not to pursue those claims at all. And he might have to engage special counsel and oppose entry of any judgment Shepard might seek on the advisory jury verdict, on the ground that the liability the jury found should run in favor of the Trustee, as the representative of Pashard, rather than to Shepard. Such processes would be expensive to the estate and potentially duplicative, and in any event the Trustee rather than Shepard should dictate their timing and forum.

Finally, as noted by the *Conejo* court, it is important for a bankruptcy court to preserve a level playing field for all parties to negotiate a plan. 96 F.3d at 353. To do so, no creditor should be given the opportunity to liquidate his claim on his schedule in his chosen forum, while other creditors are denied that strategic advantage.[3] In-

---

under the Federal Rules of Bankruptcy Procedure, Rules 7001–7087.

**2.** Unless otherwise indicated, all code, section, and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure.

**3.** Shepard argues this is of no concern to creditors because the estates are solvent and all creditors will be paid in full. But there has been no evidence or finding to that effect, and the objecting creditors and Trustee have not had an opportunity to be heard on that issue.

deed, it would be particularly inappropriate to grant such preferential leverage to one creditor simply because he got closer to judgment before bankruptcy intervened, because such a policy would encourage a rush to the courthouse that has always been recognized as contrary to sound bankruptcy policy, as evidenced by the preference provisions of § 547.

### Conclusion

For the foregoing reasons, the Court finds and concludes that cause does not exist to lift the automatic stay, with two exceptions. Stay relief will be granted to permit the parties to litigate to conclusion the motions pending in the Riverside Bankruptcy Court for remand of the two cases or for their transfer of venue should they, or the Riverside Bankruptcy Court, determine that it is useful to resolve those procedural issues at this time.

The denial of stay relief will be without prejudice. A separate final order will be entered on the motions for relief from the automatic stay simultaneously with the entry of this memorandum decision, which shall constitute the findings of fact and conclusions of law underlying that order.