912 F.2d 1162
 Bankr. L. Rep. P 73,613
In re TUCSON ESTATES, INC., Debtor.
Alphus CHRISTENSEN; Homer Lawrence; Thomas Ward,
Petitioners-Appellants,
v.
TUCSON ESTATES, INC., an Arizona corporation, Debtor-Appellee.
Alphus CHRISTENSEN; Homer Lawrence; Thomas Ward,
Petitioners-Appellees,
Gordon Cox; Randall Newman; Murray Samuell, Jr.,
Intervenors-Appellants,
v.
TUCSON ESTATES, INC., an Arizona corporation, Debtor-Appellee.
 Nos. 88-15745, 88-15776.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1990.
Decided Aug. 30, 1990.
 
 John A. Baade, Miller & Pitt, Tucson, Ariz., for petitioners-appellants-appellees.
 Robert E. Miles, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for intervenors-appellants.
 Scott H. Gan, Mesch, Clark, & Rothschild, Tucson, Ariz., for debtor-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before FLETCHER, PREGERSON and NELSON, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Petitioners-appellants appeal the district court's affirmance of the bankruptcy court's stay of their state litigation against the debtor, Tucson Estates, Inc., and its three sole shareholders, who are also its officers and directors. The bankruptcy court permitted the state court to litigate one of plaintiffs' (petitioners-appellants in this court) claims but not another, prevented the state court from determining liability to individual claimants in respect to the litigated claim, and prohibited the state court from entering judgment. The three officers cross-appeal the district court's reversal of the bankruptcy court's order directing release of the recordation of the state court judgment against the officers which was recorded by the plaintiffs. We reverse the bankruptcy court's order staying the litigation and find the cross-appeal moot.
 
 FACTS
 
 2
 Tucson Estates, Inc. (TE, Inc.) filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on November 24, 1987. At that time, a state court class action lawsuit against TE, Inc. and its three individual shareholders, directors, and officers, Murray Samuell, Jr., Gordon Cox, and Randall F. Newman, was about six years old. The class action plaintiffs are homeowners in a mobile home subdivision, Tucson Estates I (TE I), in which TE, Inc. owns the streets and common facilities.
 
 
 3
 The homeowners pay a fee to TE, Inc. for maintaining these facilities, among which is a golf course. Prior to gaining class action status, the original three individual homeowner plaintiffs made two claims in their state lawsuit, commenced in November 1981: (1) the homeowners are entitled to an accounting of the uses to which their maintenance fee had been put, and (2) the homeowners are entitled to enforcement of the promises and representations made by the subdivision's original developer creating an implied restrictive covenant that the golf course would be maintained for TE I residents' exclusive use.
 
 
 4
 In March 1984, the state court ordered TE, Inc. to make annual accountings of the maintenance fee to the homeowners. After examining the first such accounting, the homeowners amended their complaint to allege a class action for damages for misappropriation of the maintenance fees. The plaintiffs joined the officers as individual defendants in January 1987.
 
 
 5
 On November 2, 1987, the state court granted partial summary judgment to the homeowners, holding that there was an implied restrictive covenant that the golf course be for "Tucson Estates" residents' exclusive use. The court left for trial the question of exactly what properties were encompassed by the term "Tucson Estates"--only TE I, the subdivision inhabited by the homeowners in the class action, or two neighboring areas as well. One of the neighboring areas is Tucson Estates II (TE II), owned by TE, Inc.[1]
 
 Appeal: Bankruptcy Court Stay
 
 6
 TE, Inc. filed its bankruptcy petition on November 24, 1987, shortly before the state trial was scheduled to begin (on December 1). The bankruptcy court lifted the automatic stay on the state court lawsuit on December 1, allowing the state trial to proceed, which it did on December 3. The bankruptcy court held an evidentiary hearing on the stay, requested by TE, Inc., on December 5.
 
 
 7
 In deciding whether to reimpose the stay, the bankruptcy court expressed concern that it would be bound by the state court judgments regarding (1) the amount of damages awarded and (2) the area benefitted by the restrictive covenant. Evidence indicated that applying the covenant to benefit only TE I would diminish the value of TE II, and thus the estate as well, by between $1.18 million and $2.8 million. On December 8, the bankruptcy court reimposed the stay on the state trial of the covenant issue but permitted the parties to try the misappropriation claim. The bankruptcy court prohibited the state court, however, from determining the liability to each claimant and entering a final judgment against the bankrupt.[2]
 
 
 8
 The three officers had intervened in the stay proceeding, and the bankruptcy court stayed execution of any judgment against both them and TE, Inc. The court was concerned that the officers were "really the alter ego of Tucson Estates" and that the plaintiff class could circumvent the stay against TE, Inc. by executing a judgment against the officers. Transcript of Proceedings at 15 (Dec. 5, 1987) [hereinafter Dec. 5 Transcript].[3]
 
 
 9
 On October 28, 1988, the district court on appeal found that the bankruptcy court did not abuse its discretion in staying litigation of the covenant issue and prohibiting determination of and entry of final judgment on the misappropriation damage claims. The homeowners appeal this ruling.
 
 
 10
 Cross-Appeal: Release of Judgment Recordation
 
 
 11
 The jury reached a verdict in the state trial on December 22, 1987. The state court entered judgment against the officers for $4.8 million but reserved jurisdiction to enter judgment against TE, Inc. if and when permitted by the bankruptcy court. The homeowners recorded the judgment against the officers the next day. The officers sought relief from the recordation, alleging that the bankruptcy court's stay prohibited it. On February 16, 1988, the bankruptcy court ordered the release of the recordation. The homeowners appealed the release order, arguing that the stay permitted recordation, although not execution. The district court reversed on October 28, 1988. On December 21, 1988, the Arizona Court of Appeals affirmed in part, reversed in part, and remanded the state case, appealed by the officers, to the Arizona trial court for retrial because of state law errors in the first trial. The Arizona Supreme Court denied a petition and cross-petition for review on June 5, 1990. The officers cross-appeal from the district court's decision denying release of the recordation.
 
 JURISDICTION
 
 12
 An order denying relief from a bankruptcy stay is appealable. In re Kemble, 776 F.2d 802, 805 (9th Cir.1985). We have jurisdiction under 28 U.S.C. Sec. 158(d).
 
 STANDARD OF REVIEW
 
 13
 We review the district court's decision on an appeal from a bankruptcy court de novo. See In re Windmill Farms, Inc., 841 F.2d 1467, 1469 (9th Cir.1988) (review of Bankruptcy Appellate Panel decision). We apply the same standard of review to the bankruptcy court findings as does the district court: findings of fact are reviewed under the clearly erroneous standard, and conclusions of law, de novo. Id. We may reverse the bankruptcy court's denial of the stay if that court abused its discretion. In re Universal Farming Indus., 873 F.2d 1334, 1337 (9th Cir.1989).
 
 DISCUSSION
 I. Appeal: Bankruptcy Stay
 
 14
 A bankruptcy filing imposes an automatic stay of all litigation against the debtor. 11 U.S.C. Sec. 362(a). A bankruptcy court "shall" lift the automatic stay "for cause." Id. Sec. 362(d)(1). "Cause" has no clear definition and is determined on a case-by-case basis, In re MacDonald, 755 F.2d 715, 717 (9th Cir.1985). Where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial. See In re Castlerock Properties, 781 F.2d 159, 163 (9th Cir.1986).
 
 
 15
 The circumstances under which a bankruptcy court should abstain are spelled out in 28 U.S.C. Sec. 1334, part of the 1984 amendments to the Bankruptcy Act of 1978. Congress passed the amendments to heal constitutional infirmities in the Act's jurisdictional provisions found by the Supreme Court in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Bankruptcy Amendments and Federal Judgeship Act of 1984, Statements by Legislative Leaders, 1984 U.S.Code Cong. & Admin.News 576. The Court held in Marathon that a traditional state common-law action subjected to federal adjudication because of a bankruptcy filing must be heard by an Article III judge. See id. at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting) (describing the plurality's holding as limited by the concurring opinion); Castlerock, 781 F.2d at 160 n. 1.
 
 
 16
 Section 1334 sets forth when a bankruptcy court must abstain and when it may abstain in favor of state court adjudication of an issue. Because the parties do not address the propriety of mandatory abstention under 28 U.S.C. Sec. 1334(c)(2) and because we reverse on permissive abstention grounds, we need not consider mandatory abstention. Section 1334(c)(1) governs permissive abstention:
 
 
 17
 Nothing in this section prevents a district court in the interest of justice or in the interest of comity with State courts or respect for the State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
 
 
 18
 A Texas bankruptcy court has summarized the factors a court should consider when deciding whether to abstain:(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. Sec. 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.
 
 
 19
 In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). The bankruptcy court in this case chose not to abstain because: (1) it could not determine based on the evidence before it whether execution of the state court judgment would have an economic impact on the debtor's estate, (2) the case is a core proceeding in which the bankruptcy court should enter the final order, and (3) the golf course and income derived from it are estate property, over which the bankruptcy court has exclusive jurisdiction. Transcript of Hearing for Proposed Findings of Fact and Conclusions of Law at 11 (Dec. 8, 1987) [hereinafter Dec. 8 Transcript].
 
 
 20
 The court was concerned chiefly about the res judicata effect of the state determination of the restrictive covenant's reach because of the judgment's potential impact on the estate's value. A judgment that the restrictive covenant excluded benefits as to TE II, meaning TE II owners had no use-rights in the golf course, could decrease the estate's value by $1.18 million to $2.8 million. The court stated specifically that it did not want to be bound by the state court decision on the restrictive covenant's reach, id. at 12, and would not lift the stay unless it was not so bound, Dec. 5 Transcript at 14-15, 37-38.
 
 
 21
 The bankruptcy judge incorrectly reasoned that staying the entry of the state court's judgment would permit him to "review" the state court decision. In granting plaintiffs' motion for partial summary judgment prior to the bankruptcy, the state court had already determined preclusively that "Tucson Estates" is entitled to the benefits of the restrictive covenant. The only remaining question was what property constitutes "Tucson Estates." An underlying assumption made by the bankruptcy court was that its decision on this issue and the misappropriation damages claim might be different from the state court's. Yet state law governs both issues, so both courts should reach the same result. The impact on the bankruptcy estate may be of grave concern to the bankrupt's creditors but it is irrelevant to the determination of which properties benefit from the covenant and what damages are due under state law. The bankruptcy court mistakenly confused the question whether the homeowners were entitled to judgment in state court that could serve as the basis for a claim in bankruptcy court, with the treatment of the claim in the bankruptcy. Another bankruptcy court judge has explained aptly that "section 1334 supports the duality of allowing a claim to be adjudicated to final judgment in state court while preserving the issues of the status and enforceability of the claim to the bankruptcy court." Republic Reader's, 81 B.R. at 427; see also In re Comer, 723 F.2d 737, 740 (9th Cir.1984) (distinguishing between extent of debt, for which state court decision was res judicata, and nature of debt, the crucial issue in dischargeability for which a state court decision would not be res judicata in a bankruptcy court); In re Ozai, 34 B.R. 764, 766 (Bankr.9th Cir.1983) (existence of debt and dischargeability of debt are separate issues). The bankruptcy court cannot use the claim's impact on the value of the estate to justify reaching a different conclusion than that dictated by state law.
 
 
 22
 The bankruptcy court also attempted to justify its refusal to abstain by asserting that this dispute is a core proceeding. Under 28 U.S.C. Sec. 157(b)(1), "[b]ankruptcy judges may hear and determine all core proceedings arising under title 11, or arising in a case under title 11, ... and may enter appropriate orders and judgments...." Subsection 157(b)(2) lists matters that qualify as core proceedings, two of which the bankruptcy court found satisfied, permitting it to decide the case. The court first considered the case to be about allowance and disallowance of claims. See id. Sec. 157(b)(2)(B). This finding again confuses the tasks of determining whether the homeowners have a claim, and determining what to do with it in the bankruptcy if they do. The parties dispute not whether a claim should be disallowed but instead whether the plaintiffs have a claim to bring to the bankruptcy court in the first place.
 
 
 23
 The bankruptcy court also asserted that this case is a core proceeding because it involves identifying and administering estate property. If disputed, the issue of whether the golf course and income from it are property of the estate is subject only to federal determination. See 11 U.S.C. Sec. 541. That the golf course and income from it are estate property, however, has remained undisputed. The issue that is disputed--what the debtor's interest in that property is (i.e., what use can be made of the property)--is governed by state law, In re Loretto Winery, Ltd., 898 F.2d 715, 718 (9th Cir.1990), and need not be resolved by a federal court.
 
 
 24
 The bankruptcy court's two reasons for finding this a core proceeding are incorrect. We see no other basis that is viable.[4] This case instead fits the description of a related proceeding under subsection 1334(c)(2). The property dispute is related to a case under title 11 (the bankruptcy proceeding) but does not arise under title 11; the action "could not have been commenced in a court of the United States absent jurisdiction under this section." 28 U.S.C. Sec. 1334(c)(2). To characterize such litigation as a core proceeding, thus permitting the bankruptcy court to hear and enter judgment in the case, would raise constitutional problems under Marathon, given the state litigation's common-law nature. See Castlerock, 781 F.2d at 161-62. We have held that "a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems. The apparent broad reading that can be given to Sec. 157(b)(2) [defining core proceedings] should be tempered by the Marathon decision." Id. at 162.
 
 
 25
 The bankruptcy court also supported its stay decision by finding that the golf course and income from it are estate property, over which the court has exclusive jurisdiction, and that any claims respecting them would likewise be subject to its exclusive jurisdiction. Under subsection 1334(d), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." Congress did not intend this provision to reach as broadly as the bankruptcy court would have it. The provision's purpose was to eliminate the jurisdictional distinctions between property in the possession and property not in the possession of the bankruptcy court. See 124 Cong.Rec. 11,108, 17,403, 17,425 (1978); 1 Collier Bankruptcy Manual Sec. 23.00 (1978). Courts in applying the provision defer to state courts in many cases that concern estate property. See, e.g., Pursifull v. Eakin, 814 F.2d 1501, 1506 (10th Cir.1987) (abstention enabling state court to determine rights in oil and gas lease); In re Ozai, 34 B.R. at 766 (abstention appropriate for state court to hear claims on deed's validity).
 
 
 26
 The bankruptcy court's rationale for reimposing the stay is flawed in its interpretation and application of the law. Because state law governs the interpretation of the restrictive covenant, the state court and the bankruptcy court should reach the same conclusion regardless of impact on the estate's value, making its concern that the state judgment would have a res judicata effect inappropriate. The court incorrectly characterized the case as a "core" proceeding. That the golf course and income from it are estate property does not require the bankruptcy court, as opposed to the state court, to hear the dispute.
 
 
 27
 In deciding to lift the stay partially,[5] the bankruptcy court made specific factual findings that provide a fully developed record and strongly support lifting the stay of the litigation entirely to allow the entry of judgment. (Execution of any judgment, of course, is another matter.) The bankruptcy court found that the debtor and officers waited until six years after the commencement of the state court litigation and until they had lost a very important summary judgment motion, to file for bankruptcy. The delay suggests that the filing's purpose was to avoid an unfavorable state court judgment. The bankruptcy court found also that interests in judicial economy supported letting the state litigation continue, given its six-year length and status--the trial had already begun. Deferring to the state court would pose no financial hardship to the debtor. The state litigation would not interfere with the bankruptcy proceedings but would in fact facilitate them by liquidating 1,600-2,300 class action plaintiff claims. Dec. 8 Transcript at 8-9. These findings, supported by the record and not clearly erroneous, strongly support a decision to abstain under the law of our circuit. See Castlerock, 781 F.2d at 163 (affirming court's decision to lift stay for abstention reasons, finding that state claims and imminent trial justify the decision); In re Kemble, 776 F.2d at 807 (affirming court's decision to lift stay, stating that extensive preparation for retrial alone justified the decision); see also In re Titan Energy, Inc., 837 F.2d 325, 330-34 (8th Cir.1988) (affirming abstention in case involving state law questions that could not have been brought in federal court absent bankruptcy jurisdiction and that would not hinder bankruptcy action).
 
 
 28
 The circumstances of this case viewed as a whole and evaluated in light of the factors well enunciated in Republic Reader's lead us to conclude that the bankruptcy court abused its discretion by not abstaining and entirely lifting the stay. The following factors all support abstention: the beneficial impact that resolution of the class claims in state court will have on efficient administration of the estate, the extent to which state law issues predominate over bankruptcy issues, the existence of prior litigation of those issues which had already begun in state court, the difficult and unsettled nature of state law as applied to implied restrictive covenants,[6] the lack of a federal jurisdictional basis other than bankruptcy jurisdiction for the state claims, the case's status as a related rather than core proceeding, the ease of permitting completion of the state court litigation while reserving the judgment's enforcement to the bankruptcy court, the likelihood that the company's and officers' instigation of the proceeding in bankruptcy court is forum shopping to avoid imminent defeat in state court, the right to a jury trial in state court, and the nondebtor status of the homeowner plaintiffs. Although the decision on the homeowners' claims will affect significantly the bankruptcy estate's value, and the value of the claims asserted against it, the issues reserved by the bankruptcy court--the restrictive covenant's reach and the amount of the misappropriation claim damages--are distinct from the administration of the bankruptcy estate. They involve determining whether the homeowners have a liquidated claim to file in the bankruptcy, not how that claim should be administered.[7] The bankruptcy court abused its discretion in imposing the stay except as to the execution of any judgment.[8]
 
 II. Cross Appeal: Recordation
 
 29
 The recordation issue is moot. An issue generally becomes moot when it is no longer "live" or "the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)); see also Walker v. Huston, 689 F.2d 901, 902 (9th Cir.1982). The judgment which was recorded was entered on December 22, 1987, and amended on May 2, 1988. The Arizona Court of Appeals, ruling on the amended judgment on December 21, 1989, remanded for a new trial. Lawrence v. Samuell, No. 2 CA-CV 88-0285 (Ariz.Ct.App. Dec. 21, 1989) (unpublished memorandum). The Arizona Supreme Court denied a petition and cross-petition for review on June 5, 1990.
 
 
 30
 The recorded judgment no longer has any legal effect. The judgment as amended has been vacated by the Arizona Court of Appeals decision. The cross-appeal is moot.
 
 CONCLUSION
 
 31
 We reverse the district court's decision affirming the bankruptcy court's reimposition of the stay, except as to execution of the judgment. The cross-appeal is moot.
 
 
 
 [1]
 The other is a recreational vehicle park; its relationship to TE, Inc., which may or may not be the owner of the roads and amenities within the park, is unclear from the record
 
 
 [2]
 A jury eventually returned a verdict for the homeowners on the misappropriation claim. On appeal by the officers, the Arizona Court of Appeals remanded for a new trial because of state law errors in the trial. Lawrence v. Samuell, No. 2 CA-CV 88-0285 (Ariz.Ct.App. Dec. 21, 1988) (unpublished memorandum), cert. denied, No. CV 90-0125 (Ariz. June 5, 1990)
 
 
 [3]
 The bankruptcy court did not make specific factual findings on this issue, and it is unclear whether it properly stayed execution against the officers. We need not address this issue because the officers filed their own bankruptcy petitions on January 29, 1988, automatically staying execution against them
 
 
 [4]
 Subsection 157(b)(2)'s list is nonexclusive
 
 
 [5]
 The court may terminate, annul, modify, or condition its stay. 11 U.S.C. Sec. 362(d)
 
 
 [6]
 The Arizona Court of Appeals first established the doctrine of implied restrictive covenants in Shalimar Ass'n v. D.O.C. Enters., Ltd., 142 Ariz. 36, 688 P.2d 682 (Ct.App.1984). Further application of the doctrine and development of principles for interpreting such covenants have not appeared in Arizona published opinions
 
 
 [7]
 As Republic Reader's notes, the burden a case has on on the federal court's docket may support abstaining in favor of state adjudication. 81 B.R. at 428-29. That is not a factor here
 
 
 [8]
 At oral argument, the officers argued that the Arizona Court of Appeals decision remanding the state case for a new trial moots the stay issue. They claim that the stay litigation will start all over again with the retrial and, essentially, that changed circumstances make the petitioners' request to lift the stay totally unsupportable now. The officers apparently believe that the only factor justifying lifting the stay on the first go-round was the pre-existing, ongoing state trial. That conclusion flies in the face of the bankruptcy court's findings and the record. As we have pointed out, even the bankruptcy judge agreed that several factors weighed against the stay. Time has changed none of those factors in the officers' favor. Specifically, it was not just that the parties were in the middle of the trial that supported letting it continue, but that the litigation had gone on so long in state court and that TE, Inc. was trying to escape from a disadvantaged position by filing its bankruptcy petition. To begin again in federal court would waste not only the parties' resources but also the many judicial resources invested by the state, for no reason authorized by federal bankruptcy law