**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SHAWNE MERRIMAN,<br>　　　　　Debtor. | BAP No. CC-19-1245-LTaF<br><br>Bk. No. 2:18-bk-23173-VZ |
| SHAWNE MERRIMAN,<br>　　　　Appellant,<br>v.<br>FERDINAND FATTORINI; DEANN<br>FATTORINI,<br>　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Honorable Vincent Zurzolo, Bankruptcy Judge, Presiding

APPEARANCES:
Raymond H. Aver of Law Offices of Raymond H. Aver argued for
appellant; Torsten M. Bassell of LARI-JONI & BASSELL, LLP argued for
appellees.

Before: LAFFERTY, TAYLOR, and FARIS, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

Chapter 13[1] debtor Shawne Merriman appeals the bankruptcy court's order retroactively annulling the automatic stay to permit appellees Ferdinand and Deann Fattorini to proceed with a state court wrongful death action against him and others. Post-petition, and shortly before the statute of limitations was set to run on the wrongful death claim, the Fattorinis filed their state court complaint without knowledge of the bankruptcy case. Upon being notified of the case, they promptly moved to annul the stay to validate the filing of the state court complaint and to liquidate their claim against Mr. Merriman. The bankruptcy court found cause retroactively to lift the stay and granted the motion.

We AFFIRM. We publish to address the impact, if any, of *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) (per curiam), which was decided during the pendency of this appeal, on the issues raised therein.

## FACTUAL BACKGROUND

Mr. Merriman filed a chapter 13 petition in November 2018. Notice of the case was not served on the Fattorinis.

In July 2019, several months after Mr. Merriman's bankruptcy filing,

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

the Fattorinis filed a lawsuit against Mr. Merriman and others in Los Angeles County Superior Court seeking damages under state law in connection with the July 2017 death of their daughter Kimberly ("State Court Action"). A few days later, after learning of Mr. Merriman's bankruptcy through his counsel, they filed a motion for relief from stay (the "Stay Motion").[2] They asked the court to annul the stay to permit them to continue litigating the State Court Action, which was set for trial in January 2021. The motion was supported by the form declaration prescribed by the Local Rules for the Central District of California and a supplemental declaration of the Fattorinis' counsel, to which was attached a copy of the state court complaint and other documents. In the supplemental declaration, counsel testified that he had researched Mr. Merriman but did not discover that he had filed a bankruptcy petition. Counsel also testified that the State Court Action was filed in July 2019 because the applicable limitations period was about to expire.

Mr. Merriman filed an opposition, arguing that the Stay Motion was not supported by sufficient evidence and did not demonstrate that "cause" existed to lift the stay pursuant to § 362(d)(1) in light of the relevant factors. He also argued that the request for retroactive annulment lacked factual or legal grounds other than "suspicious and objectionable statements" in counsel's declaration regarding lack of notice of the bankruptcy filing.

---

[2]The Fattorinis also filed a proof of claim on July 30, 2019.

3

In addition, Mr. Merriman objected to statements contained in counsel's supplemental declaration in support of the Stay Motion. Those statements pertained to the circumstances of Kimberly's death and included information obtained through the Los Angeles County Sheriff's investigation and information about Mr. Merriman discovered through internet searches. He argued that the declaration testimony lacked foundation, was not based on personal knowledge, was hearsay, and constituted improper opinion testimony.

At the hearing on the Stay Motion, the court sustained several of Mr. Merriman's evidentiary objections, but it nevertheless found that cause existed to annul the stay. The court found that the Fattorinis did not have notice of the bankruptcy case before they filed the State Court Action. Additionally, it found that the issues in the State Court Action needed to be litigated and that it made sense to have those issues tried in one place. Accordingly, the court ruled that it would lift the stay retroactively to permit the Fattorinis to liquidate their damages in state court and potentially obtain findings and conclusions from the state court that could be applied preclusively in a nondischargeability proceeding.

The bankruptcy court's order granted retroactive relief from stay and provided that if the Fattorinis were to obtain a final judgment against Mr. Merriman in the State Court Action, they would be stayed from enforcing the judgment without a further order of the bankruptcy court.

4

The court also ordered that if a final judgment were obtained in the State Court Action, the Fattorinis could file it "as a liquidated claim in Debtor's bankruptcy action and commence an adversary proceeding to determine whether any such judgment is enforceable or dischargeable."

Mr. Merriman timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in retroactively annulling the automatic stay.

## STANDARD OF REVIEW

A bankruptcy court's decision retroactively to annul the automatic stay is reviewed for an abuse of discretion. *Gasprom, Inc. v. Fateh (In re Gasprom, Inc.)*, 500 B.R. 598, 604 (9th Cir. BAP 2013) (citing *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997); additional citation omitted). A bankruptcy court abuses its discretion if its decision is based on the wrong legal standard or its findings of fact were illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

5

We may affirm on any basis supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

Section 362(d)(1) provides that the bankruptcy court, on request of a party in interest and after notice and a hearing, must grant relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning" the stay, upon a showing of "cause."

"What constitutes 'cause' for granting relief from the automatic stay is decided on a case-by-case basis." *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990); additional citation omitted). In assessing whether relief from stay should be granted to allow state court proceedings to continue in that forum, the bankruptcy court should consider judicial economy, the expertise of the state court, prejudice to the parties, and whether exclusively bankruptcy issues are involved. *Id.*

In determining whether retroactive annulment of the stay is appropriate, courts have focused on two main factors: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

The bankruptcy court's findings are sparse, but the record supports its ruling. The State Court Action involves exclusively state law claims, and Mr. Merriman has pointed to no prejudice to him resulting from permitting the State Court Action to proceed, other than that he lacks insurance that could fund his defense, and Mr. Merriman would face the same problem if the case were litigated in bankruptcy court. Mr. Merriman is one of six defendants in the State Court Action so the case would have to be tried in state court, with or without Mr. Merriman; judicial economy dictates that the matter be tried in one forum.[3] Of course, if the Fattorinis prevail in the State Court Action, they will need to return to the bankruptcy court to litigate nondischargeability, but such a proceeding would likely be relatively simple if the state court makes findings that may be applied preclusively.

As for retroactive relief, the bankruptcy court found that the Fattorinis lacked notice of the bankruptcy filing, and the record shows that if they were not granted such relief, their wrongful death claim may be time-barred.[4]

---

[3]Although not raised by any party, personal injury tort and wrongful death claims are non-core proceedings, *see* 28 U.S.C. §§ 157(b)(2)(B) and (O), and such claims are to be tried in the district court in which the bankruptcy case is pending, *see* 28 U.S.C. § 157(b)(5).

[4]We note, however, that California Code of Civil Procedure § 356 provides that "[w]hen the commencement of an action is stayed by injunction or statutory

(continued...)

Mr. Merriman contends that the bankruptcy court abused its discretion in annulling the stay because: (1) the Stay Motion was not supported by sufficient evidence; (2) the court did not apply correct standards in determining that cause existed to lift the stay and that retroactive annulment was appropriate; and (3) the facts weighed against granting the requested relief. We disagree.

## A.     The Stay Motion was supported by sufficient evidence.

As noted, the bankruptcy court sustained many of Mr. Merriman's evidentiary objections to the supplemental declaration filed with the Stay Motion. He contends that the remaining evidence was insufficient to support a finding of cause under § 362(d)(1). He argues that the "unverified complaint" attached to the declaration should be deemed without evidentiary effect, citing *Esteem v. City of Pasadena*, No. CV 04-662-GHK, 2007 WL 4270360, at *3 (C.D. Cal. Sept. 11, 2007) (citing *Moron v. Selig*, 447 F.3d 748, 759 & n.16 (9th Cir. 2006)). Those cases involved litigants attempting to use unverified complaints in summary judgment proceedings to prove the matters asserted therein. Here, the complaint was submitted only to describe the nature of the state court litigation, not to prove the truth of its allegations. It was thus properly

<hr>

[4](...continued)
prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." No party cited this statute or its potential impact on the analysis of whether retroactive relief was warranted.

considered by the court.

Mr. Merriman also asserts that many of counsel's statements in the supplemental declaration were not based on personal knowledge. But the bankruptcy court excluded much of the supplemental declaration, and Mr. Merriman does not indicate which portions of the remainder he finds objectionable. Thus he has not shown that the bankruptcy court relied on any inadmissible evidence, and the non-excluded evidence attached to the Stay Motion supports its findings (i.e., the fact that counsel did not learn of the bankruptcy until after filing the State Court Action, and the procedural posture and nature of the claims being asserted in that action).

**B.     The bankruptcy court applied the correct legal standards.**

Mr. Merriman argues that the bankruptcy court erred in finding cause for granting relief from stay by failing to make findings as to the "*Curtis* factors," which were cited by this Panel in *Kronemyer*. Those factors were initially articulated in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), and were adopted by the bankruptcy court in *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 559–60 (Bankr. C.D. Cal. 2004).[5]

---

[5]Those factors are:

(1) Whether the relief will result in a partial or complete resolution of the issues[;]

(continued...)

9

In *Kronemyer*, the Panel articulated the factors to be considered in

---

[5](...continued)

(2) The lack of any connection with or interference with the bankruptcy case[;]

(3) Whether the foreign proceeding involves the debtor as a fiduciary[;]

(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases[;]

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation[;]

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question[;]

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties[;]

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c)[;]

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)[;]

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties[;]

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial[; and]

(12) The impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. at 799–800 (citations omitted).

lifting the stay to permit state court litigation to proceed as set forth above–judicial economy, the expertise of the state court, prejudice to the parties, and whether exclusively bankruptcy issues are involved. 405 B.R. at 921. The Panel noted that the bankruptcy court had appropriately considered the *Curtis* factors in deciding to grant relief from stay to allow pending litigation to continue in another forum. *Id.* But the Panel did not hold that express consideration of each of the *Curtis* factors was required. In fact, it based its affirmance of the bankruptcy court's order primarily on grounds that judicial economy weighed in favor of stay relief. *See id.* at 921-22.

In a similar vein, Mr. Merriman contends that the bankruptcy court erred in not properly applying the factors in the balancing of the equities test for retroactive annulment of the stay set forth in *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24-25 (9th Cir. BAP 2003).[6] In *Fjeldsted*, although the

---

[6]Application of that test involves consideration of the following factors:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The Debtor's overall good faith (totality of circumstances test);

(continued...)

Panel held that the bankruptcy court must consider the equities in determining whether retroactive relief is appropriate and articulated factors that may be considered in that determination, it also noted that "a mechanistic application of factors is inappropriate in making this determination, [but] such factors may be considered as an aid to the court in weighing the equities." 293 B.R. at 24.

In summary, the bankruptcy court was not **required** to make findings

---

[6](...continued)
5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the *status quo ante*;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*In re Fjeldsted*, 293 B.R. at 25 (citation omitted).

12

as to each suggested factor when determining whether cause existed for granting relief from stay or whether the equities weighed in favor of retroactive annulment. Mr. Merriman has not shown that the bankruptcy court failed to apply the correct legal standards for both findings as set forth in *Kronemyer* and *National Environmental Waste*.

**C.    The bankruptcy court did not err in finding cause for relief from stay.**

Mr. Merriman contends that the Fattorinis failed to demonstrate cause to grant relief from stay. He reaches this conclusion based on his analysis of the *Curtis* factors, which he submits weigh against a finding of cause. Specifically, he argues that (1) the State Court Action had only recently been filed, (2) he has no insurance policy that could fund his defense of the State Court Action and he is financially unable to defend it, (3) the Fattorinis presented no evidence regarding their chances of success in the State Court Action, (4) he would be prejudiced by the continuance of the State Court Action, and (5) the deadline for filing a complaint to determine nondischargeability has expired.

As discussed, the bankruptcy court was not required expressly to analyze each of the *Curtis* factors in reaching its conclusions. In any event, there is no requirement that the moving party show it would be likely to prevail in the state court litigation. And Mr. Merriman is wrong that the Fattorinis are time-barred from filing a nondischargeability complaint. The

deadline for filing a nondischargeability complaint under § 523(a)(2), (4), or (6) expired on February 11, 2019, but that deadline does not apply to the Fattorinis because they lacked notice of the bankruptcy filing in time to file a timely complaint. *See* 11 U.S.C. § 523(a)(3)(B) (a debt is not discharged if it is not listed or scheduled in time for the creditor to file a timely proof of claim and request for determination of nondischargeability under § 523(a)(2), (4), or (6), unless the creditor had notice or actual knowledge); Rule 4007(b) ("A complaint other than under § 523(c) may be filed at any time."). And the bankruptcy court's order explicitly provides that if the Fattorinis prevail in state court, they may return to the bankruptcy court for a determination of nondischargeability.[7]

As discussed, the relevant factors–judicial economy, expertise of the state court, prejudice to the parties, and whether exclusively bankruptcy issues are involved–weighed in favor of finding cause to grant relief from the stay. The first, second, and fourth considerations weigh in favor of relief because the State Court Action involves exclusively state law claims against multiple defendants. And the only evidence of prejudice before the bankruptcy court was Mr. Merriman's declaration testimony that he has no insurance coverage to defend against the State Court Action. Although one

---

[7]Although laches may be asserted as a defense to a complaint under § 523(a)(3)(B), *see Beaty v. Selinger (In re Beaty)*, 306 F.3d 914, 926 (9th Cir. 2002), the language of the court's order permitting the Fattorinis to return to the bankruptcy court for a determination of nondischargeability would foreclose this defense.

of the *Curtis* factors is "[w]hether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation," 40 B.R. at 800, Mr. Merriman has not cited any authority that this factor alone would have warranted denial of the Stay Motion in light of all the relevant circumstances, particularly where he would probably face the same problem no matter which court adjudicated the claims.

**D.  The bankruptcy court did not err in finding that retroactive relief was appropriate.**

Finally, Mr. Merriman argues that the bankruptcy court abused its discretion in annulling the stay retroactively because it made no finding of cause for retroactive relief. He notes that when he objected to the form of order submitted by the Fattorinis, the bankruptcy court added language to the order that retroactive relief was appropriate because the Fattorinis did not have notice of the bankruptcy filing, but he still contends that the bankruptcy court abused its discretion by not applying the *Fjeldsted* "balancing of the equities" factors.

As noted, the bankruptcy court was not required to analyze each and every factor articulated in *Fjeldsted*, but it was required to balance the equities by considering whether the Fattorinis were aware of the bankruptcy petition and whether prejudice would result to them by not granting retroactive relief. *See In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055. Here, the court found that the Fattorinis did not have notice of the

bankruptcy case; Mr. Merriman does not dispute that finding. Moreover, the record supports retroactive relief: the Fattorinis moved for relief from stay only a few days after learning of the bankruptcy case, and if retroactive relief were not granted so as to validate the filing of the state court complaint, they might be time-barred from pursuing their wrongful death claim.[8]

E.    **The Supreme Court's *Acevedo* opinion does not preclude retroactive relief from stay.**

During the pendency of this appeal, the Supreme Court decided *Acevedo*, 140 S. Ct. 696, in which it held that a United States District Court's nunc pro tunc order remanding a removed lawsuit to state court was not effective to retroactively confer jurisdiction so as to validate the state court's orders entered before remand. *See id.* at 699-701.[9] At least one bankruptcy court has interpreted *Acevedo* as prohibiting a grant of retroactive or nunc pro tunc relief from stay. *In re Telles*, No. 8-20-70325-reg, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020).

We do not believe that the ruling in *Acevedo* prohibits a bankruptcy court's exercise of the power to grant retroactive relief from stay. But this

---

[8]See footnote 4, *supra*.

[9]*Acevedo* was published during briefing for this appeal, albeit after the parties had already submitted their opening briefs. Neither party filed a notice of supplemental authority and, when asked at oral argument whether they intended to discuss it, they declined.

court should always carefully consider the scope and reach of Supreme Court opinions; and in light of our disagreement with *Telles*–that *Acevedo* is directly relevant to requests to terminate or annul the stay retroactively–we consider the issue here and at some length.

In *Acevedo*, employees of Roman Catholic academies in the Archdiocese of San Juan, Puerto Rico, sued the Archdiocese and other entities in the Puerto Rico Court of First Instance for alleged termination of pension benefits. *Id.* at 697. During the litigation, the Archdiocese filed a chapter 11 case and removed the lawsuit to the United States District Court for the District of Puerto Rico. *Id.* at 699-700. Roughly a month later, the bankruptcy court dismissed the chapter 11 case, but the lawsuit was not immediately remanded to the Court of First Instance. *Id.* at 700. Nevertheless, shortly after the bankruptcy case was dismissed, the Court of First Instance issued orders against various defendants requiring payments and ordering seizure of assets. *Id.* Approximately five months later, the District Court entered an order remanding the lawsuit to the Court of First Instance; the order provided that the remand was effective as of the date of dismissal of the bankruptcy case. *Id.*

The defendants appealed the payment and seizure orders to the Puerto Rico Court of Appeals, which reversed. *Id.* at 698. The Puerto Rico Supreme Court reversed the court of appeals. *Id.* The Supreme Court then granted the Archdiocese's writ of certiorari. *Id.* at 701. But the Supreme

Court did not reach the merits of the appeal. The Court held that the Court of First Instance lacked jurisdiction to issue the payment and seizure orders at the time it did so because the District Court still had jurisdiction over the lawsuit, despite the fact that its remand order purported to be effective retroactively:

> Once a notice of removal is filed, "the State court shall proceed no further unless and until the case is remanded." 28 U. S. C. § 1446(d). The state court loses all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgment are not . . . simply erroneous, but absolutely void . . . .

> The Court of First Instance issued its payment and seizure orders after the proceeding was removed to federal district court, but before the federal court remanded the proceeding back to the Puerto Rico court. At that time, the Court of First Instance had no jurisdiction over the proceeding. The orders are therefore void.

*Id.* at 700 (citations, quotation marks, and alterations omitted).

The Court held that nunc pro tunc orders could not be used retroactively to confer jurisdiction where none existed:

> Federal courts may issue nunc pro tunc orders . . . to reflect the reality of what has already occurred. Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.

> Put colorfully, nunc pro tunc orders are not some Orwellian vehicle for revisionist history—creating facts that never occurred in fact. Put plainly, the court cannot make the

18

record what it is not.

*Id.* at 700–01 (citations, quotations, and alterations omitted).

This holding–that nunc pro tunc orders may not create jurisdiction where none exists–is consistent with other Supreme Court opinions holding that jurisdiction in the federal courts must emanate from the United States Constitution or a statute and cannot be created by the actions of a court. *See, e.g., Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) (only Congress may determine a lower federal court's jurisdiction; court-made rules may not create or withdraw federal jurisdiction).

We do not interpret *Acevedo* as pertaining to the bankruptcy court's power to annul the automatic stay under § 362(d). The language of the removal statute explicitly prohibits the state court from exercising jurisdiction over the removed action. *Acevedo*, 149 S.Ct. at 700; *see also Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1238 (9th Cir. 1994) ("the clear language of the general removal statute provides that the state court loses jurisdiction upon the filing of the petition for removal." (Citations omitted)).

In contrast, § 362(d) does not purport to deprive the bankruptcy court of jurisdiction; rather, it explicitly grants the court the power to modify the stay to permit another court or entity to exercise control over an asset or claim. To the extent that jurisdiction describes a statutory grant of authority

to adjudicate a matter or exercise a power, it is absolutely clear that Congress expressly gave such power, including the power retroactively to grant relief, to bankruptcy courts. "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by **terminating, annulling, modifying, or conditioning** such stay . . . ." 11 U.S.C. § 362(d) (emphasis added). Congress' decision to deploy four verbs to describe the various ways in which a bankruptcy court might grant relief from stay indicates an express decision to grant bankruptcy courts the broadest possible range of options in respect of the stay, including annulling it, which has the effect of treating it as if it had never existed.

In *Telles*, the bankruptcy court ruled that, under *Acevedo*, it lacked authority to grant retroactive relief from stay to validate a post-petition foreclosure sale because after the bankruptcy case was filed, the state court lost jurisdiction over estate property, and jurisdiction could not be retroactively restored. 2020 WL 2121254 at *4-5. The bankruptcy court's holding in *Telles* rests on the premise that *Acevedo*'s prohibition of using nunc pro tunc orders to create jurisdiction in a state court pertained to the bankruptcy court's ability to annul the stay. As a result, despite the fact that Congress, in enacting § 362(d), explicitly empowered bankruptcy courts to annul the stay, the *Telles* court concluded that it lacked an effective method to do so.

The bankruptcy court's reasoning in *Telles* implicitly depends on the fact that when a bankruptcy case is filed, two things happen: (1) an estate is created, comprised of all property interests of the debtor, "wherever located and by whomever held," § 541(a), and the district court obtains exclusive jurisdiction over those property interests, 28 U.S.C. § 1334(e); and (2) the automatic stay under § 362(a) goes into effect, which prohibits most acts to exercise control over property of the estate or to pursue pre-petition claims against the estate.

But the conclusion that *Acevedo* prohibits the annulment of the stay based on jurisdiction and property of the estate concerns reads too much into the Supreme Court's opinion. As previously demonstrated, Congress drafted the language of § 362(d) to give bankruptcy courts broad authority to modify the stay to maximize its value as a flexible and useful tool in the bankruptcy process and to preserve and balance the rights of the parties.

Although the bankruptcy court obtains jurisdiction over estate **assets** once a bankruptcy petition is filed, *see* § 541(a), the stay does not transfer jurisdiction from one court to another, and granting relief from stay does not remove an asset from the bankruptcy estate. *See Catalano v. Comm'r of Internal Revenue*, 279 F.3d 682, 686-87 (9th Cir. 2002). It merely eliminates, to a greater or lesser degree, an impediment to the pursuit or enforcement of claims or the pursuit of assets.

Relief from stay usually permits another (frequently state law based)

21

process to go forward, and notions of bankruptcy court jurisdiction are no impediment to that result. Viewed another way, stay relief is premised upon the pursuit of the correct economic or equitable result, in light of the purposes of a bankruptcy filing. For example, stay relief is appropriate when an asset to be pursued in state court is of no economic use to the estate, i.e., the asset has no equity, or when a debtor has acted in bad faith, i.e., by filing multiple bankruptcy cases affecting the property. Such concerns are baked into every stay relief determination that involves a request to pursue an asset, whether prospective (terminating the stay), or retroactive (annulling it). The *Telles* decision, taken to its logical end, would essentially prohibit relief from stay in all circumstances, including granting prospective relief, where the movant seeks to exercise control over an estate asset. Such a conclusion would render § 362(d) meaningless.

Where the stay enjoins pursuit of litigation of a claim, such as the case before us, granting relief from stay raises even fewer jurisdictional concerns. Although district courts have original and exclusive jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), they have original but not exclusive jurisdiction over all civil proceedings airing in or arising under or related to a bankruptcy case, 28 U.S.C. § 1334(b). Further, Congress clearly contemplated that in certain circumstances, other courts would hear and determine proceedings arising in or related to a bankruptcy case (subject to limits on enforcement), i.e., abstention, 28 U.S.C. § 1334(c), and removal

and remand, 28 U.S.C. § 1452.

Congress left to the judgment of bankruptcy courts (via the reference) the decision about where a claim or action should be litigated by leaving the concept of "cause" to terminate, annul, modify, or condition the stay purposefully undefined and flexible. It has long been acknowledged that the decision to grant relief from stay to permit litigation to continue in another forum is related to decisions regarding abstention and is one best determined via reference to a multi-part test that seeks to balance concerns re judicial economy, harm to the estate, and prejudice to third parties. *See In re Tucson Estates, Inc.*, 912 F.2d at 1167 (reciting factors to be considered in determining whether permissive abstention is appropriate); *In re Curtis*, 40 B.R. at 799-800 (reciting factors to be considered when determining to grant stay relief to litigate claims in another court). These concerns are part of every competent determination to grant or deny relief from stay to pursue a claim in another forum, whether prospective or retroactive. Additional considerations are appropriate when determining whether retroactive relief is warranted. *See In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055; *In re Fjeldsted*, 293 B.R. at 24-25.

This result is perfectly consistent with the requirement that, in the performance of its "traffic cop" role, bankruptcy courts must have broad authority to determine the appropriate forum for dispute resolution, taking into account and giving full respect to the panoply of interests to be

weighed and protected in these matters, as well as to the dignity and power of other judicial processes. The statutory language, and longstanding and sound experience, make clear that the effective use of these remedies must occasionally include the option of granting retroactive relief.

## CONCLUSION

Mr. Merriman has not shown that the bankruptcy court abused its discretion in granting retroactive annulment of the stay to permit the State Court Action to be litigated.[10] *Acevedo* does not dictate otherwise.

Accordingly, we AFFIRM.

---

[10]In both their Stay Motion and their responsive brief in this appeal, the Fattorinis argued that the allegations of the state court complaint constitute domestic violence and thus the State Court Action falls into the exception to the automatic stay for civil proceedings regarding domestic violence under § 362(b)(2)(A)(v). The bankruptcy court did not make any findings on this issue, and Mr. Merriman did not raise it in his opening brief. Because this issue is not necessary to our disposition of this appeal, we express no opinion on it.